[Civ. No. 43902. Second Dist., Div. One. Feb. 25, 1976.]

KAISER STEEL CORPORATION, Plaintiff and Appellant, v.
WESTINGHOUSE ELECTRIC CORPORATION,
Defendant and Respondent.

738

**COUNSEL**

Kirtland & Packard, Loyd W. Reed and Robert E. Moore, Jr., for Plaintiff and Appellant.

Lynberg & Connor, Charles A. Lynberg, Morgan, Wenzel & McNicholas and Patrick C. Quinlivan for Defendant and Respondent.

**OPINION**

**THOMPSON, J.**—In this appeal from a judgment for the defendant in an action asserting defendant's liability on theories of products liability,

breach of express warranty, breach of the implied warranties of fitness and merchantability, negligence, and "res ipsa loquitur," we conclude that the trial court erred in applying an improper standard in ruling upon plaintiff's motion to be relieved of facts admitted pursuant to Code of Civil Procedure section 2033 for failure to deny under oath requests for admissions. That conclusion requires that summary judgment granted by the trial court to the defendant on the causes of action sounding in express and implied warranty be reversed and that a judgment based upon nonsuit granted by the trial court on the cause of action for negligence also be reversed. We conclude further that the trial court properly granted a nonsuit after hearing evidence on plaintiff's cause of action for products liability because plaintiff is not within the class of persons protected by that doctrine. Accordingly, we reverse the judgment as to all causes of action except that sounding in products liability.

Plaintiff filed its complaint commencing the case at bench on November 28, 1967. The complaint is framed in six causes of action. The first alleges the ultimate facts of strict liability of a manufacturer supplying a defective product. The second asserts breach of an express warranty that an electric motor supplied by defendant to plaintiff for use in plaintiff's steel mill was free from defects. The third and fourth causes of action allege the facts of defendant's breach of the warranties of fitness and merchantability. The fifth asserts that the generator was negligently manufactured, and the sixth cause of action amplifies the fifth, adding the factual basis for the application of the doctrine of res ipsa loquitur. The causes of action seek damages of $2,500,000.

Defendant answered the complaint, denying its charging allegations and asserting the affirmative defense, among others, that the generator was sold pursuant to an agreement limiting defendant's obligation to correction, by replacement or repair, of defects in workmanship or material developing in normal use during the one-year period from date of shipment and relieving defendant of liability for consequential damages.

On December 9, 1968, pursuant to Code of Civil Procedure section 2033, defendant served a request for admissions upon plaintiff. Requests two through five in combination ask plaintiff to admit or deny that the electric motor was furnished, sold and accepted subject to the contractual provision limiting defendant's liability alleged in its affirmative defense. No time for response to the request for admissions is stated in the request. On January 28, 1969, defendant responded to the request for

admissions, denying requests two through five as well as others. The response, however, was not under oath.

Defendant did not, pursuant to Code of Civil Procedure section 2034, subdivision (a), move for an order that the matters of fact which were the subject of the request for admissions be deemed admitted. Rather, both parties proceeded through extensive discovery and a flurry of pretrial motions inherently bottomed on the existence of a factual issue concerning the nature of the contract between plaintiff and defendant.[1] On April 3, 1973, less than one month prior to the date the case was scheduled for trial, defendant filed a notice of motion for summary judgment. Defendant asserted that plaintiff's responsive denial to the requests for admissions not having been sworn as required by Code of Civil Procedure section 2033, requests two through five were deemed admitted. Hence, defendant argued, the contractual provisions asserted in the affirmative defense barred plaintiff's claim arising out of a failure of the motor occurring more than one year after it was delivered. The motion is supported by an affidavit and declaration establishing the date of delivery and date of failure of the motor.

On April 23, 1973, plaintiff served and filed another response to the request for admissions, denying requests two through five, this time under oath. It opposed the motion for summary judgment with declarations establishing the factual issue of the existence of the contractual provision relied upon by defendant as part of the agreement for sale of the motor. The declarations state that the provision was expressly superseded by a later provision of plaintiff's purchase order which also provided that plaintiff reserved the right to make claims for unsatisfactory or defective merchandise and retained the warranties of merchantability and fitness.

In its points and authorities resisting the motion for summary judgment, plaintiff argued that an unsworn denial of a request for admissions could be corrected by verification at a later date so long as the proponent of the request was not prejudiced and that the conduct of the parties in the litigation showed no prejudice to defendant. Defendant argued, in response, that plaintiff was conclusively bound by failure to file a sworn denial because of the long passage of time and plaintiff's

---

[1] As late as February 27, 1973, about 60 days before the trial date, defendant's counsel, in connection with a motion to bifurcate the trial of the issues of liability and damages, characterized complex issues to be tried. He listed them, omitting entirely any reference to any bar to liability created by the contractual provision.

failure to move for relief from default pursuant to Code of Civil Procedure section 473.

On April 26, 1973, the trial court granted defendant a summary judgment on the three causes of action framed in express and implied warranty. Its minute order states: "Plaintiff has failed to file and serve a sworn statement in response to defendant's request for admissions within the time provided by CCP 2033 and thus the relevant matters of fact set forth in the request are deemed admitted. These include the fact that the warranty provision of the Westinghouse proposal was part of the contract between the parties. It is too late to relieve plaintiff of this default under CCP 473. . . . The warranty provision provides that [defendant's] compliance with its obligations under said provision constitutes a fulfullment [sic] of all . . . liabilities in respect to the apparatus sold." The court also granted a motion for summary judgment on the cause of action asserting res ipsa loquitur, stating that the theory was available in plaintiff's cause of action for negligence.

The trial court denied defendant's motion for summary judgment on plaintiff's causes of action alleging negligence and strict products liability. Trial on the issue of liability alleged in those two causes of action commenced before a jury, the issue of damages having been bifurcated on defendant's motion. Plaintiff's opening statement disclosed that the negligence cause was based upon the defective installation of rivets in the electric motor which became displaced by continued use causing a short circuit which destroyed the motor. Defendant moved for a nonsuit on the opening statement, asserting that the contractual limitation on liability deemed admitted by plaintiff's failure to serve and file a timely denial to the request for admissions barred defendant's liability for negligent construction of the motor. The trial judge having declined to reconsider the earlier ruling, the motion was granted.

Plaintiff presented its evidence on strict products liability to the jury. That evidence established a defect in the welding of rivets in the motor which caused its destruction. It established also that destruction of the motor caused the portion of plaintiff's steel manufacturing plant in which it was used to shut down. Other evidence disclosed that the motor was designed by defendant to plaintiff's specifications, that plaintiff's purchase order to defendant stated that: ". . . all merchandise hereby ordered is subject to inspection and testing by [plaintiff] within a reasonable time after arrival at the ultimate destination," and that the motor was delivered to plaintiff unassembled and was then assembled and tested by an affiliate of plaintiff before it was placed in operation.

The trial court granted a nonsuit at the conclusion of plaintiff's case, thus terminating the litigation in defendant's favor. In this appeal from the resulting judgment, plaintiff contends: (1) the trial court prejudicially erred in determining that requests for admissions two through five were deemed conclusively admitted and in therefore granting summary judgment on the warranty causes of action and a nonsuit on the cause of action for negligence; (2) the court erred in granting the motion for summary judgment on the cause of action alleging the factual basis of res ipsa loquitur; (3) the trial court erroneously granted defendant's motion to bifurcate the trial; and (4) the trial court erroneously granted a nonsuit on the cause of action in strict products liability.

*Requests for Admissions*

At the time of the trial court's judgment, Code of Civil Procedure section 2033, subdivision (a), stated in pertinent part: "After service of summons or the appearance of a party, any other party who has appeared in the action may file and serve upon such party . . . a written request for the admission by the latter of . . . the truth of any relevant matters of fact set forth in the request. . . . Each of the matters of which an admission is requested shall be deemed admitted unless, within a period designated in the request, not less than 20 days after service thereof or within such shorter or longer time as the court may allow on motion and notice, the party to whom the request is directed files and serves upon the party requesting the admission either (1) a sworn statement denying specifically the matters of which an admission is requested or setting forth in detail the reasons why he cannot truthfully admit or deny those matters or (2) written objections on the ground that some or all of the requested admissions are privileged or irrelevant or that the request is otherwise improper in whole or in part, together with a notice of hearing the objections at the earliest practicable time. For good cause and without notice, the court may enlarge the time not to exceed 15 days."

At the time of judgment, Code of Civil Procedure section 2034, subdivision (a), stated in pertinent part: ". . . Upon the refusal or failure of a party to admit or deny . . . the truth of any matters of fact, after having been served with a request under Section 2033 of this code, the party serving such request may on . . . notice make [an] application for an order requiring further answers to such request or, in the alternative, for an order that . . . the truth of said matters of fact be deemed admitted for the purpose of the action."

As sections 2033 and 2034 read at the time of judgment, they were in inherent conflict as applied to the facts of the case at bench. Section 2033 purported to be self-executing so that an unsworn denial to a request for admissions, although timely, resulted in the facts of the request being deemed admitted because there was no denial under oath. Section 2034, however, provided for a motion by the proponent of the request for an order that facts were deemed admitted upon the served party's refusal to admit or deny, a motion which was unnecessary if section 2033 is construed as self-executing in light of that section's further requirement that an objection to a request for admissions be accompanied by a motion placing the validity of an objection upon the court's calendar.[2]

The conflict is resolved if the provision of section 2033 permitting the court to extend the time for response to requests for admissions is construed as vesting the trial court with the power, upon a showing of good cause, to relieve a party of the consequences of a failure to admit or deny or of a defective denial. That proposition, although unstated, seems to be the rationale of *Milton v. Montgomery Ward & Co., Inc.*, 33 Cal.App.3d 133, 138 [108 Cal.Rptr. 726], relieving a plaintiff at trial of the consequences of a failure to deny a request for admission that none of the physicians who treated him could say with reasonable medical certainty that his condition could have been caused by the accident which was the basis of his lawsuit.

Considering the Federal Rule of Civil Procedure, which section 2033 parallels, circuit courts hold that a trial court has discretion to permit a late response to requests for admissions (*French v. United States* (9th Cir. 1969) 416 F.2d 1149, 1152), and specifically the discretion to permit a late verification of a previously unsworn denial (*Hartley & Parker, Inc. v. Florida Beverage Corporation* (5th Cir. 1965) 348 F.2d 161, 163).

■ We thus conclude that, read together, Code of Civil Procedure sections 2033 and 2034 empower the trial court to relieve a party served with a request for admissions from the consequences of a defective denial. That power stems from sections 2033 and 2034 themselves and is not dependent upon the general authority of a trial court to relieve a person from default pursuant to Code of Civil Procedure section 473. Consequently, the six-month limitation for exercise of judicial discretion

---

[2]The issue here discussed seemingly would not exist under a 1974 amendment to section 2033. That statute now provides that a failure by the propounding party to move for further response waives his right to compel further response. The apparent intent of the amendment is to bar the proponent of a request for admissions from relying upon a deficiency in the response unless he pursues his rights under section 2034.

to relieve from default pursuant to Code of Civil Procedure section 473 is inapplicable to action relieving from the consequences of a defective denial to a request for admissions.

Here the trial court refused to relieve plaintiff of the consequences of its failure to verify its previous denial to defendant's request for admissions and refused to permit a late verification because the time limit of Code of Civil Procedure section 473 had expired. Since the trial court in ruling upon plaintiff's request to be relieved of the consequences of its unsworn denial of the request for admissions did not apply the proper standard, the portions of judgment founded upon the facts deemed admitted must be reversed if the error was prejudicial. (*Poeschl v. Superior Court,* 229 Cal.App.2d 383, 387 [40 Cal.Rptr. 697].) ■ The record establishes prejudice to plaintiff. Based upon the failure of the request for admissions to state a date for response as required by Code of Civil Procedure section 2033, the conduct of the parties to the litigation conducting discovery and motion practice as if the facts were not admitted, and the lack of prejudice to defendant if plaintiff were relieved, the trial court properly could have exercised its discretion to permit a late verification of the response.[3]

### Res Ipsa Loquitur

■ Since plaintiff was entitled to invoke the doctrine of res ipsa loquitur in support of its separate cause of action alleging negligence in general terms (3 Witkin, Cal. Procedure (2d ed.) Pleading § 477), it was not prejudiced by error, if any, of the trial court in granting a motion for summary judgment on a separately stated cause of action containing the allegations of the fact necessary for the application of the doctrine. The court, by its ruling, preserved the availability of res ipsa loquitur to establish the cause of action for negligence pleaded in general terms.

### Bifurcation

Arguing that the same witnesses could be called on the issues of liability and damages and that the nature and extent of damage is relevant to "the nature and extent of the warranties between the parties, the unconscionability of the purported limitation on [plaintiff's] recovery of damages, and the alleged contributing negligence of [plaintiff] . . . ,"

---

[3]Not aware of the record that will be present on reconsideration of the issue, we do not imply what the trial court's ruling should be on remand.

plaintiff contends that the trial court erred in granting defendant's motion to bifurcate the trial of the issues of liability and damages.

The contention lacks merit. Code of Civil Procedure section 598 empowers the court, in a jury trial, to try the issue of liability before the issue of damages upon motion of a party. That statute states that trial may be bifurcated "when the convenience of witnesses or the ends of justice would be promoted thereby." ■ On the record here, the trial court could properly conclude that while some evidence relating to damages would also be necessary on the issue of liability, only a small fraction of the evidence would be repeated so that the ends of justice were served by bifurcation.

### Products Liability

In *Greenman* v. *Yuba Power Products, Inc.,* 59 Cal.2d 57 [27 Cal.Rptr. 697, 377 P.2d 897, 13 A.L.R.3d 1049], our Supreme Court recognized that "rules defining and governing warranties that were developed to meet the needs of commercial transactions cannot properly be invoked to govern the manufacturer's liability to those injured by its defective products unless those rules also serve the purposes for which such liability is imposed." (59 Cal.2d at p. 63.) To meet the need, the court adopted the principle that: "A manufacturer is strictly liable in tort when an article he places on the market, knowing that it is to be used without inspection for defects, [4] proves to have a defect that causes injury to a human being."[5] (59 Cal.2d at p. 62.)

Since "[s]ales warranties serve [the] purpose fitfully at best," the doctrine of strict products liability is designed "to insure that the costs of injuries resulting from defective products are borne by the manufacturers that put such products on the market rather than by the injured persons who are powerless to protect themselves." (*Greenman* v. *Yuba Power Products, Inc., supra,* 59 Cal.2d at p. 63.) Decisions since *Greenman* applying the doctrine of products liability have in general involved the cost shifting rationale. (See e.g., *Vandermark* v. *Ford Motor Co.,* 61 Cal.2d 256 [37 Cal.Rptr. 896, 391 P.2d 168]; *Elmore* v. *American Motors Corp.,* 70 Cal.2d 578 [75 Cal.Rptr. 652, 451 P.2d 84]; *Price* v. *Shell Oil Co.,* 2 Cal.3d 245 [85 Cal.Rptr. 178, 466 P.2d 722]; *Cronin* v.

---

[4]Defendant conceded at argument that for the purposes of ruling on its motion for nonsuit, the evidence of plaintiff's inspection of the motor is not conclusive.

[5]While *Greenman* is phrased in terms of damage to person, a later California Supreme Court decision states that strict products liability covers physical injury to the plaintiff's property but not reimbursement for consequential economic loss from the defective product. (*Seely* v. *White Motor Co.,* 63 Cal.2d 9, 19 [45 Cal.Rptr. 17, 403 P.2d 145].)

*J.B.E. Olson Corp.,* 8 Cal.3d 121 [104 Cal.Rptr. 433, 501 P.2d 1153];
*Barth* v. *B. F. Goodrich Tire Co.,* 265 Cal.App.2d 228 [71 Cal.Rptr. 306];
*Canifax* v. *Hercules Powder Co.,* 237 Cal.App.2d 44 [46 Cal.Rptr. 552];
*Kriegler* v. *Eichler Homes, Inc.,* 269 Cal.App.2d 224 [74 Cal.Rptr. 749].)

The rule of products liability is further rationalized as an inducement to manufacturers to design and produce a safe product (Calabresi & Hirschoff, *Toward a Test for Strict Liability in Torts,* 81 Yale L.J. 1055, 1068), and as a means to avoid the artificial conditions to recovery in warranty created by the rules of privity (Prosser, *The Assault Upon The Citadel (Strict Liability to the Consumer),* 69 Yale L.J. 1099, 1130-1134).

Because the California rule of products liability is designed to encompass situations in which the principles of sales warranties serve their purpose "fitfully at best," the rule of products liability does not subsume the entire area of a manufacturer's liability for a defective product. (*Seely* v. *White Motor Co., supra,* 63 Cal.2d 9, 16-19.) "[T]he adequacy of sales law controls the use of tort law, since the need to resort to tort law depends upon the extent to which sales law does or does not afford protection to a disappointed buyer." (Comment, *Manufacturer's Responsibility for Defective Products: Continuing Controversy Over the Law to be Applied,* 54 Cal.L.Rev. 1681, 1690-1691; Kessler, *The Protection of the Consumer Under Modern Sales Law,* 74 Yale L.J. 262.)

Because the Legislature through the adoption of the Uniform Commercial Code has defined the precise conditions to, and extent of, liability for defective products in situations covered by the code, we must not, in deference to the Legislature, create rules of liability which displace those of the Uniform Commercial Code. (Titus, *Restatement (Second) of Torts Section 402 A and the Uniform Commercial Code,* 22 Stan.L.Rev. 713, 755.) The rule of strict liability for defective products is an example of necessary paternalism judicially shifting risk of loss by application of tort doctrine because California's statutory scheme fails to adequately cover the situation. Judicial paternalism is to loss shifting what garlic is to a stew—sometimes necessary to give full flavor to statutory law, always distinctly noticeable in its result, overwhelmingly counterproductive if excessive, and never an end in itself.

The case at bench presents a situation in which the statutory principles of sales warranties work well so that to apply the tort doctrines of products liability will displace the statutory law rather than bring out its full flavor. The plaintiff-buyer and defendant-seller are commercial

enterprises[6] contracting from positions of relatively equal bargaining power for a product designed to negotiable specifications and not furnished off the shelf. Privity is no artificial barrier to recovery. Since the specifications of the product are negotiable, the tort doctrine of products liability as between the buyer and seller is no inducement to design and produce a safe product. Since the manufacturer and buyer have bargained in a commercial setting not only for the product but also for the measure and mode of reimbursement for defects in the product, any societal interest in loss shifting is absent. Whether the loss is thrust initially upon the manufacturer or customer, it is ultimately passed along as a cost of doing business included in the price of the products of one or the other and thus spread over a broad commercial stream. (Calabresi & Hirschoff, *Toward a Test for Strict Liability in Torts,* 81 Yale L.J. 1055, 1070-1074.)

■ We thus conclude that the doctrine of products liability does not apply as between parties who: (1) deal in a commercial setting; (2) from positions of relatively equal economic strength; (3) bargain the specifications of the product; and (4) negotiate concerning the risk of loss from defects in it. (*Southwest Forest Indus., Inc.* v. *Westinghouse Elec. Corp.* (9th Cir. 1970) 422 F.2d 1013, cert. den., 400 U.S. 902 [27 L.Ed.2d 138, 91 S.Ct. 138].)

In the case at bench, the four elements are present in the evidence presented to the trial court by Kaiser. Hence, the trial court properly granted Westinghouse's motion for a nonsuit.

### Disposition

The judgment is affirmed insofar as it concerns plaintiff's first cause of action framed in terms of products liability. The judgment for the defendant is otherwise reversed.

Lillie, Acting P. J., and Hanson, J., concurred.

---

[6]The majority and concurring-dissenting opinions in *Seely* v. *White Motor Co., supra,* 63 Cal.2d 9, are sometimes psychoanalyzed by the law reviews as indicating a disagreement over the application of the rule of products liability in other than a consumer setting. (See e.g., Franklin, *When Worlds Collide: Liability Theories and Disclaimers in Defective Products Cases,* 18 Stan.L.Rev. 974, 977-989.) The disagreement does not appear on the face of the opinions. Chief Justice Traynor, writing for the majority, focused his opinion on the nature of damages recoverable in products liability, while Justice Peters reached essentially the same result by emphasis upon the class of persons protected. The majority opinion ignores the dissent's approach in context but does not reject the rule of law employed.