[No. D003296. Fourth Dist., Div. One. Sept. 5, 1986.]

SUMITOMO BANK OF CALIFORNIA, Plaintiff and Appellant, v.
TAURUS DEVELOPERS, INC., et al., Defendants and Respondents.

214

COUNSEL

Leland, Parachini, Steinberg, Flinn, Matzger & Melnick, Harvey L. Gould, Jeffrey H. Lowenthal and Steven B. Mains for Plaintiff and Appellant.

Lillick, McHose & Charles and James D. Hoey III for Defendants and Respondents.

Hetland & Hansen, John R. Hetland and Charles A. Hansen as Amici Curiae on behalf of Defendants and Respondents.

OPINION

WORK, J.—The Sumitomo Bank of California (Bank or Sumitomo) appeals from a judgment of dismissal after demurrers were sustained without leave to amend on its causes of action against Taurus Developers, Inc. We affirm the portion of the judgment dismissing the causes of action for breach of contract, bad faith waste, fraud, and violations of the Business and Professions Code, since they are barred under the full credit bid rule; and for strict liability since it is not applicable to a lender in a real estate transaction who purchases a defective construction project. We reverse the portion of the judgment dismissing the negligent construction cause of action since we find a beneficiary-purchaser at a trustee's sale may state a negligence claim against a builder, independent of an impairment of security claim.

I

On appeal, we regard the allegations of the complaint as true and disregard any defect in the pleadings that does not affect the substantial rights of the parties. (*Fundin* v. *Chicago Pneumatic Tool Co.* (1984) 152 Cal.App.3d 951, 955 [199 Cal.Rptr. 789].)

In November 1979, Sumitomo loaned Taurus money, secured by a trust deed, to build a condominium project. Taurus agreed to construct the project according to plans and specifications approved by Sumitomo, without change or alteration except with the Bank's written consent; to furnish the Bank receipted bills covering work done or materials purchased showing the expenditure of an amount equal to the total funds disbursed; and not to use the funds for other purposes until all construction bills were paid. Sumitomo could enter the property at all times and take appropriate actions if construction did not conform with specifications, but this right did not relieve Taurus of its duty to inspect the construction and notify the Bank immediately in writing of unsatisfactory work.

Taurus defaulted on its payments. The Bank exercised its power of sale and purchased the property for a bid equal to the amount of the outstanding indebtedness at the trustee's sale.

The trustee's deed included the following "as is" language: "Title Insurance and Trust Company, a California corporation (herein called Trustee), as the duly appointed Trustee under the Deed of Trust hereinafter described, does hereby grant and convey, but without warranty, express or implied, to the Sumitomo Bank of California."

After purchase, the Bank discovered latent defects, including improperly designed and built structural retaining walls, improperly designed drainage, inadequate water proofing, leaking roofs, and abnormal cracking of concrete slabs and pavement, causing the Bank to incur $400,000 repair damages.

The Bank sued under various theories, alleging in essence Taurus agreed to supervise the construction project and notify the Bank of any defects in workmanship; intentionally failed to properly perform or supervise the work; knew the work was being improperly performed; knew a poorly constructed project would cost less to build; intended to construct the project improperly; intended to sell the defective condominiums to purchasers ignorant of the defects; used the loan money for purposes other than construction; would have discovered the defects if it had inspected the construction; intended to induce the Bank to give it the loans based on promises it did not intend to keep; misrepresented it would and did properly construct the project and

would immediately notify the Bank of defects; the Bank could not discover the primarily latent defects until after it purchased the project and it justifiably relied on Taurus' status as a licensed contractor and express promises. As damages, the Bank alleges inducement to enter into a loan agreement and to continue to make loan disbursements it would not otherwise have made, the diminished value of the project, impairment of its security interest by the difference between the value of the project as it was sold at the foreclosure sale and its value had it been properly constructed, cost of repair and management to correct the defects, and punitive damages.

All causes of action were dismissed for the following reasons. (1) Breach of contract, fraud, waste: barred by Sumitomo's full credit bid at the trustee's sale; (2) negligence: barred because Sumitomo purchased the property "as is" and without warranty, and thus Taurus owed no duty of care to Sumitomo; (3) strict liability: inapplicable when the purchaser is a lender-beneficiary buying from a trustee at an involuntary foreclosure sale; (4) Business and Professions Code: fails since Taurus is not engaged in ongoing activity necessitating an injunction; (5) alter ego: fails to state a cause of action.

We agree with all of the trial court's conclusions, except for the negligence count (and accordingly, the alter ego claim).

II

BREACH OF CONTRACT, BAD FAITH WASTE, AND FRAUD

The facts upon which Sumitomo bases its breach of contract, bad faith waste, and fraud causes of action arise from the lender-borrower transaction. That is, the breach of contract arises from Taurus' failure to inspect for and notify of defects as required by the loan agreement; the bad faith waste arises from the same acts which impaired the security (Civ. Code, § 2929[1]); and the fraud arises from making promises with no intention to perform them so as to induce the Bank to make the loan agreement, and misrepresentations regarding inspections and lack of defects so as to induce continued disbursements.

The measure of damages for a borrower's tortious acts against a secured lender is "the amount of the impairment of the security, that is the amount by which the value of the security is less than the outstanding indebtedness and is thereby rendered inadequate." (*Cornelison* v. *Kornbluth*

---

[1]Civil Code section 2929 states: "No person whose interest is subject to the lien of a mortgage may do any act which will substantially impair the mortgagee's security."

(1975) 15 Cal.3d 590, 606 [125 Cal.Rptr. 557, 542 P.2d 981] [bad faith waste]. See also, *Glendale Fed. Sav. & Loan Assn.* v. *Marina View Heights Dev. Co.* (1977) 66 Cal.App.3d 101, 124, 128 [135 Cal.Rptr. 802] [fraud].)

██ ██ ██ ██ ██ Normally under Code of Civil Procedure section 580d, a lender who pursues a private (i.e., under a trustee's power of sale), rather than a judicial, foreclosure remedy is not entitled to a deficiency judgment based on the difference between the foreclosure sale proceeds and the outstanding indebtedness.[2] This antideficiency rule does not apply, however, when the borrower has committed fraud or bad faith waste[3] resulting in impairment of the security. (*Cornelison* v. *Kornbluth, supra,* 15 Cal.3d at p. 605; *Glendale Fed. Sav. & Loan Assn.* v. *Marina View Heights Dev. Co., supra,* 66 Cal.App.3d at pp. 138-139.)

██ Thus, the Bank's allegations of tortious conduct by Taurus during the lendor transaction state a cause of action not barred by the antideficiency rules *if* its security interest has been impaired. Since the Bank made a full credit bid at the private foreclosure sale, as a matter of law its security was not impaired. The issue was dispositively decided in *Cornelison* v. *Kornbluth, supra,* 15 Cal.3d at pages 606-608: "While our foregoing conclusion may expose defendant to liability on the basis of having committed 'bad faith' waste, the question need not be resolved. *We have further concluded that even assuming that defendant is liable on such basis, nevertheless plaintiff cannot recover since she purchased the subject property at the trustee's sale by making a full credit bid.*[10] As stated previously, the measure of damages for waste is the amount of the impairment of the security, that is the amount by which the value of the security is less than the outstanding indebtedness and is thereby rendered inadequate. (*Robinson* v. *Russell* [(1864)] 24 Cal. 467, 473.) The point of defendant's argument is that the mortgagee's purchase of the property securing the debt by entering a full credit bid establishes the value of the security as being equal to the out-

---

[2]Code of Civil Procedure section 580d states in pertinent part: "No judgment shall be rendered for any deficiency upon a note secured by a deed of trust or mortgage upon real property hereafter executed in any case in which the real property has been sold by the mortgagee or trustee under power of sale contained in such a mortgage or deed of trust." The reason for the distinction between a trustee's sale and a judicial foreclosure sale is that only the judicial sale assures the borrower a statutory right of redemption for a period of time after foreclosure. Thus, a judicial sale is not subject to the antideficiency rule. (*Cornelison* v. *Kornbluth, supra,* 15 Cal.3d at p. 602.)

[3]*Cornelison* v. *Kornbluth, supra,* 15 Cal.3d at page 604, distinguishes "bad faith" waste caused by mortgagors who are "reckless, intentional, and at times even malicious despoilers of property" from waste caused by mortgagors who are subject to economic pressures of a market depression. It is only the latter who are protected by Code of Civil Procedure section 580d's antideficiency rule, which purpose is to prevent the mortgagee from successfully entering a bid below the fair value, irredeemably obtain the property, and still collect a deficiency judgment. (*Id.,* at p. 602.)

standing indebtedness and ipso facto the nonexistence of any impairment of the security. As applied to the factual context of the instant case, the argument is that the purchase by plaintiff-vendor-beneficiary of the property covered by the purchase money deed of trust pursuant to a full credit bid made and accepted at the nonjudicial foreclosure sale resulted in a total satisfaction of the secured obligation. We agree.

"*Where an indebtedness secured by a deed of trust covering real property has been satisfied by the trustee's sale of the property on foreclosure for the full amount of the underlying obligation owing to the beneficiary, the lien on the real property is extinguished.* (Civ. Code, § 2910; *Streiff* v. *Darlington* (1973) 9 Cal.2d 42, 45 [68 P.2d 728]; *Duarte* v. *Lake Gregory Land and Water Co.* [(1974)] 39 Cal.App.3d 101, 104-105 [113 Cal.Rptr. 893].) In such event, the creditor cannot subsequently recover insurance proceeds payable for damage to the property (*Reynolds* v. *London, etc. Ins. Co.* (1900) 128 Cal. 16, 19-20 [60 P. 467]; *Duarte* v. *Lake Gregory Land and Water Co., supra,* 39 Cal.App.3d at p. 105; *Rosenbaum* v. *Funcannon* (9th Cir. 1962) 308 F.2d 680, 684-685), net rent proceeds (*Eastland S. & L. Assn.* v. *Thornhill & Bruce, Inc.* (1968) 260 Cal.App.2d 259, 261-262 [66 Cal.Rptr. 901]), or damages for waste (*Schumacher* v. *Gaines* (1971) 18 Cal.App.3d 994 [96 Cal.Rptr. 223]). '[T]he purpose of the trustee's sale is to resolve the question of value and the question of potential forfeiture through competitive bidding. . . .' (Hetland, Cal. Real Estate Secured Transactions (Cont. Ed. Bar 1970) p. 255.) In *Smith* v. *Allen* (1968) 68 Cal.2d 93, 95-96 [65 Cal.Rptr. 153, 436 P.2d 65], this court held that a nonjudicial foreclosure sale, if regularly held, finally fixes the value of the property therein sold.

"At the nonjudicial foreclosure sale, the beneficiary is entitled to make a credit bid up to the amount of his indebtedness, since it would be useless to require him to tender cash which would only be immediately returned to him. (*Central Sav. Bank of Oakland* v. *Lake* (1927) 201 Cal. 438, 447-448 [257 P. 521].) However, the mortgagee is not required to open the bidding with a full credit bid, but may bid whatever amount he thinks the property worth. Indeed 'many creditors continually enter low credit bids . . . to provide access to additional security or additional funds.' (Hetland, Secured Real Estate Transactions (Cont. Ed. Bar 1974) p. 196.) It has been said that this is what the creditor should do: '"Of course, the situation would have been different if the loss-payable mortgagee, Rosenbaum had bid less for the property as was her right. In such case, a deficiency balance of the debt would have remained for which she would have had an entitlement out of the insurance policy. The extinguishment of the mortgage or deed of trust by the foreclosure would not have affected her right to be paid the remainder of the debt under the policy. [¶] However, this was not done. Presumably,

Rosenbaum bid what she thought the security property to be worth in its condition at the time of her bid. To bid more than the property was then actually worth was not required of her, nor would such a bid be sensible."' (*Rosenbaum* v. *Funcannon, supra,* 308 F.2d 680, 685.)

"Exactly the same situation obtains with respect to an action for waste. If the beneficiary or mortgagee at the foreclosure sale enters a bid for the full amount of the obligation owing to him together with the costs and fees due in connection with the sale, he cannot recover damages for waste, since he cannot establish any impairment of security, the lien of the deed of trust or mortgage having been theretofore extinguished by his full credit bid and all his security interest in the property thereby nullified. If, however, he bids less than the full amount of the obligation and thereby acquires the property valued at less than the full amount, his security has been impaired and he may recover damages for waste in an amount not exceeding the difference between the amount of his bid and the full amount of the outstanding indebtedness immediately prior to the foreclosure sale.

"Plaintiff complains that it is difficult to calculate precisely the amount of damages recoverable for waste so as to determine the proper amount which the beneficiary or mortgagee should bid at the foreclosure sale; therefore, she urges, it is unfair to impose such a burden on the beneficiary or mortgagee. Suffice it to say that no complicated calculations are necessary. *The beneficiary or mortgagee need only enter a credit bid in an amount equal to what he assesses the fair market value of the property to be in its condition at the time of the foreclosure sale.* If that amount is below the full amount of the outstanding indebtedness and he is successful in acquiring the property at the foreclosure sale, he may then recover any provable damages for waste." (Italics added.) Footnote 10 of the quoted passage provides: "That is, in an amount equal to the unpaid principal and interest of the mortgage debt, together with the costs, fees and other expenses of the foreclosure." (See also *Brown* v. *Critchfield* (1980) 100 Cal.App.3d 858, 864-867 [161 Cal.Rptr. 342].)

■ ■ ■ ■ ■ Applying *Cornelison*'s full credit bid rule here, even if Taurus fraudulently induced the Bank to enter into the loan agreement and to continue making disbursements, the Bank cannot maintain a cause of action because it obtained property valued at an amount equal to the outstanding debt, and thus, as a lender has suffered no damages.[4]

---

[4]We note that two cases in which the courts allowed a cause of action after a full credit bid are distinguishable. In *Kass* v. *Weber* (1968) 261 Cal.App.2d 417, 419, footnote 1, 421, footnote 3, 422 [67 Cal.Rptr. 876] the court (noting in a footnote, and without discussing the issue, that a full credit bid might have been made) holds there could be no double recovery since the action was for recission and the creditor had tendered a quitclaim deed

The Bank argues that unlike the plaintiff in *Cornelison,* who apparently *knew* of the waste (*Cornelison* v. *Kornbluth, supra,* 15 Cal.3d at pp. 594, 608), Taurus intentionally concealed the defects to induce the Bank to make a full credit bid. The fatal gap in the Bank's argument is that the alleged representations were made by Taurus as a borrower, in the context of the loan transaction, rather than as a trustor at the trustee's sale. Taurus, as a defaulting trustor, was not setting the price at the sale, and in general was not representing the value of the property at the sale. It was the beneficiary (the Bank) and the trustee who controlled the sale. (See *Carpenter* v. *Title Ins. & Trust Co.* (1945) 71 Cal.App.2d 593, 597 [163 P.2d 73]; see also *Fleisher* v. *Continental Auxiliary Co.* (1963) 215 Cal.App.2d 136, 139 [30 Cal.Rptr. 137], regarding the role of the trustee.) It was the purchaser (the Bank) who decided at what price it would bid. (*Cornelison* v. *Kornbluth, supra,* 15 Cal.3d at p. 607.) Given the characteristics of a trustee's sale where control over the sale rests primarily in the beneficiary, trustee, and bidders, the trustor cannot be characterized as a "seller" under a duty to disclose known defects as exists in the normal vendor-vendee relationship. (See *Barnhouse* v. *City of Pinole* (1982) 133 Cal.App.3d 171, 191-192 [183

---

to the property. In *Brown* v. *Critchfield, supra,* 100 Cal.App.3d at page 871, the court held a full credit bid did not bar an action against the defendants for failing to disclose a tax default. However, the defendants were not identical to nor sued as mortgagors, but were an attorney and real estate broker (the latter who was also a mortgagor but not sued as such) hired to financially advise the plaintiff-mortgagee. *Brown* expressly states its holding is based on a distinction between a suit against fiduciaries as compared to mortgagors. (*Id.,* at pp. 870-871.) Also, we note our conclusion is not inconsistent with Financial Code section 779, enacted in 1985, even were it applicable to this case. The section states: "(a) Notwithstanding Section 726 of the Code of Civil Procedure or any other provision of law to the contrary, a state or nationally chartered bank or its subsidiaries or affiliates transacting business in this state that originates the loan, or any successor in interest, *may bring an action for recovery of damages, including exemplary damages not to exceed 50 percent of the actual damages, against a borrower where the action is based on fraud under Section 1572* of the Civil Code and the fraudulent conduct by the borrower induced the bank to make a real estate mortgage or deed of trust loan to the borrower.

"(b) The provisions of this section shall not apply to loans secured by single-family, owner-occupied residential real property, when the property is actually occupied by the borrower as represented to the lender in order to obtain the loan and the loan is for an amount of one hundred fifty thousand dollars ($150,000) or less, as adjusted annually, commencing on January 1, 1987, to the Consumer Price Index as published by the United States Department of Labor.

"(c) Any action maintained under this section for damages shall not constitute a money judgment for deficiency or a deficiency judgment within the meaning of Section 580a, 580b, or 580d of the Code of Civil Procedure." (Italics added.) *Cornelison* and its progeny are not inconsistent with Financial Code section 779, since they hold a cause of action based on tortious conduct of a borrower, such as fraud, which damages the lender is not barred by the antideficiency statutes. Nevertheless, as stated above, to sustain a cause of action, the lender must allege *damages* caused by the fraud. Financial Code section 779 does not impact *Cornelison*'s full credit bid rule; i.e., the beneficiary-purchaser who makes a full credit bid has established the value of the property, has had its debt fully satisfied, and thus has incurred no damages. An action for punitive damages alone cannot be sustained if the plaintiff has not been damaged. (See *Esparza* v. *Specht* (1976) 55 Cal.App.3d 1, 6 [127 Cal.Rptr. 493].)

Cal.Rptr. 881].)[5] In short, when the Bank made its decision to enter a bid, it was not entitled to rely on representations or nondisclosures occurring during the lender transaction, or nondisclosures during the trustee's sale, and thus its claim of fraudulent inducement to make a full credit bid lacks the essential element of justifiable reliance. (*Pacesetter Homes, Inc.* v. *Brodkin* (1970) 5 Cal.App.3d 206, 213 [85 Cal.Rptr. 39]; *Borba* v. *Thomas* (1977) 70 Cal.App.3d 144, 153-154 [138 Cal.Rptr. 565].)[6]

Given our conclusion the Bank was not entitled to rely on Taurus' representations or nondisclosure, we do not reach the issue of what effect, if any, the "as is" provision in the trustee's deed had on the fraud claim.

## III

### BUSINESS AND PROFESSIONS CODE VIOLATIONS

■ The Bank alleges Taurus violated Business and Professions Code section 17200 et seq.,[7] by improperly performing or supervising the construction knowing the project was intended to be sold to the public, and failing to inform the Bank, as a purchaser, of the defects or to correct the defects.

*Baumrucker* v. *American Mortgage Exchange, Inc.* (1967) 250 Cal.App.2d 451, 457 [58 Cal.Rptr. 677], cited by Sumitomo, holds that an action brought for a violation of the Business and Professions Code is not barred by Code of Civil Procedure section 580d's antideficiency rule. As already stated, the bar to the Bank's causes of action is not the antideficiency rule, which does *not*, under *Cornelison*, bar tort causes of action, but the full credit bid rule which establishes no damages. The opinion in *Baumrucker*, rendered before *Cornelison*, does not reveal whether the plaintiff

---

[5]In *Barnhouse*, the developer who failed to disclose known defects to an original purchaser was held liable for deceit to subsequent purchasers even though he made no representations directly to them. (*Barnhouse* v. *City of Pinole, supra*, 133 Cal.App.3d 171.) In contrast here, Taurus has never made any sale to any purchaser.

[6]This conclusion does not countenance willful nondisclosure by builder-trustors who know their project is defective and will foreseeably harm a subsequent purchaser. Rather, as discussed *infra*, the builder's liability, if any, is appropriately addressed under negligence law, which is based on principles of duty of due care and foreseeability rather than duties of disclosure and representations.

[7]Business and Professions Code section 17200 states: "As used in this chapter, unfair competition shall mean and include unlawful, unfair or fraudulent business practice and unfair, deceptive, untrue or misleading advertising and any act prohibited by Chapter 1 (commencing with Section 17500) of Part 3 of Division 7 of the Business and Professions Code."

purchased the secured property with a full credit bid, and thus is of no use to the Bank in its argument that it created an exception to the full credit bid rule.

The Bank has cited no authority for its proposition that under the Business and Professions Code a trustor at a trustee's sale must disclose known defects. Based on our analysis above, that the trustor has no control over the trustee's sale, we will not impose such a duty.

Finally, the Bank has not stated any basis for an injunction under Business and Professions Code section 17203 since it does not allege facts indicating Taurus is or will be continuing to engage in unlawful conduct. (*Gold* v. *Los Angeles Democratic League* (1975) 49 Cal.App.3d 365, 372 [122 Cal.Rptr. 732].)

## IV

### NEGLIGENCE

The Bank alleges Taurus' negligence in building or supervising the project resulted in the sale of a defective product for which it is liable to the purchaser-lender at a trustee sale.

As a general rule, a builder must exercise reasonable care toward those who purchase a housing structure. (*Sabella* v. *Wisler* (1963) 59 Cal.2d 21, 24 [27 Cal.Rptr. 689, 377 P.2d 889].) Privity of contract between the builder and the purchaser is not an essential requirement; rather, various factors are balanced to determine if liability will attach. "The determination whether in a specific case the defendant will be held liable to a third person not in privity is a matter of policy and involves the balancing of various factors, among which are the extent to which the transaction was intended to affect the plaintiff, the foreseeability of harm to him, the degree of certainty that the plaintiff suffered injury, the closeness of the connection between the defendant's conduct and the injury suffered, the moral blame attached to the defendant's conduct, and the policy of preventing future harm." (*Biakanja* v. *Irving* (1958) 49 Cal.2d 647, 650 [320 P.2d 16, 65 A.L.R.2d 1358]; see e.g., *Stewart* v. *Cox* (1961) 55 Cal.2d 857, 861-863 [13 Cal.Rptr. 521, 362 P.2d 345] [subcontractor held liable for negligent construction of concrete in a swimming pool although not in privity with owner]; *Huang* v. *Garner* (1984) 157 Cal.App.3d 404, 423 [203 Cal.Rptr. 800] [nonsuit order in negligence action in favor of original developer was improperly granted against third purchasers of apartment building].)

■ The issue here is whether either (1) the nature of a foreclosure sale, or (2) the identity of the purchaser as the beneficiary-lender in the real estate project, should cut off the builder's potential liability for negligent construction.[8]

Applying negligence principles, there is nothing in the nature of the foreclosure sale which would operate to cut off liability of the builder towards a purchaser as a matter of law. Even though the builder-trustor is not the seller, privity is not required and the issue of liability can be resolved by balancing the various factors delineated in *Biakanja*, i.e., whether the builder intended to put the project on the market for sale to the public; whether it was foreseeable the defects would harm a purchaser in the event of the builder's default; whether the purchaser suffered injury; whether the builder's negligence was sufficiently connected to the injury; the moral blame attached to the builder's acts; and the policy of preventing future harm. (See also *J'Aire Corp.* v. *Gregory* (1979) 24 Cal.3d 799, 806 [157 Cal.Rptr. 407, 598 P.2d 60]: "[F]oreseeability of the risk is a primary consideration in establishing the element of duty." (*Cooper* v. *Jevne* (1976) 56 Cal.App.3d 860, 869 [128 Cal.Rptr. 724] [architects who designed and supervised construction of condominiums must have known they were built for sale to the public and that purchasers would suffer economically, if not bodily, for the architect's negligence, even though they were not the sellers].)

Nor does the inclusion of an "as is" provision in the trustee's deed conveyed at the sale bar a negligence cause of action. In *Sabella,* the court rejected an argument that since the builder neither fraudulently misrepresented nor concealed, he was protected by the doctrine of caveat emptor, stating: "[S]ince Wisler's liability is predicated solely upon negligence in the construction of the dwelling, rather than upon alleged misrepresentation or any implied warranty, it does not appear that the doctrine of caveat emptor has any application to the instant action. [Citations.]" (*Sabella* v. *Wisler, supra,* 59 Cal.2d at p. 27.) Under the reasoning of *Sabella,* although an "as is" provision may under some circumstances establish an absence of fraud, it does not affect liability based on breach of a duty of care.

Although we conclude a third party purchaser at a foreclosure sale is not barred from bringing an action against a builder for negligent construction, it remains to be determined whether the same is true of a beneficiary-lender-

---

[8]Amici curiae posit an additional issue, that Code of Civil Procedure sections 558a and 726 require the trustee sale price be deemed the absolute lower limit of value for the project to avoid circumventing the no-deficiency judgment rule. However, those statutes are concerned solely with the debtor-lender positions regarding payment of the secured indebtedness.

purchaser. As the beneficiary of the security interest, the Bank was subject to the full credit bid rule barring its impairment of security cause of action. The issue here is whether a negligent construction action is merely an impairment of security action by another name, and to allow the Bank to proceed would circumvent the full credit bid rule.

The full credit bid rule exemplifies a policy determination to place the risk of a contractual loss on the creditor-purchaser who acquires ownership of the secured property. The burden is on the creditor to assess the value of the property. If it is erroneously overvalued because of unknown defects but subjected to a full credit bid, the creditor cannot state a cause of action for deficiency since the trustor owed no duty to disclose known defects at the foreclosure sale and the creditor by his own actions has had his debt satisfied.

In *Cornelison,* the alleged waste cause of action held barred by the full credit bid rule was based on the defendant's failure to properly care for and maintain a single-family dwelling, resulting in the house being condemned by the county health department. (*Cornelison* v. *Kornbluth, supra,* 15 Cal.3d at p. 594.) In *Schumacher* v. *Gaines* (1971) 18 Cal.App.3d 994, 997-998 [96 Cal.Rptr. 223], cited in *Cornelison,* the full credit bid rule barred an action for waste and breach of contract based on the trustors' acts of constructing a building which was an improvement not appropriate to the property, destroying scenery as they made other changes to the property, and gutting the interior of the building after their default. In *Brown* v. *Critchfield,* the alleged negligence cause of action held barred by the full credit bid rule was based on the defendants' failure to advise the plaintiff about his right to claim severance damages in a condemnation proceeding, and failure to prevent the creation of a surface water easement over his property. (*Brown* v. *Critchfield, supra,* 100 Cal.App.3d at pp. 864-867.)

Negligent construction principles rest on a policy determination that purchasers of homes should not be harmed by defective housing caused by the breach of a duty to construct properly (*Connor* v. *Great Western Sav. & Loan Assn.* (1968) 69 Cal.2d 850, 867-868 [73 Cal.Rptr. 369, 447 P.2d 609, 39 A.L.R.3d 224]); and that such harm is foreseeable when housing projects are built for eventual sale (*Huang* v. *Garner, supra,* 157 Cal.App.3d at p. 424; *Cooper* v. *Jevne, supra,* 56 Cal.App.3d at p. 869). Neither *Cornelison, Schumacher,* nor *Brown* involves causes of action which are imbued with such a distinct public policy concern, nor do they involve causes of action which are as clearly available to third party, nonbeneficiary purchasers. Here, the fact it is the lender who purchases and not a third party, is fortuitous. Liability for negligence should not depend upon the randomness in selection of the party who purchases an item when placed

in the market. Nor do we divine any difference as to the foreseeability of harm to a purchaser of an item constructed for the purpose of being marketed to the public merely because the insolvency or default of the builder/debtor causes the product to be marketed through a trustee sale where the lender may be forced to purchase.

Although unlikely, the damages alleged to have been waived may be exactly equal to the difference between the amount of the unsatisfied indebtedness and the *actual* fair market value of the project when sold at the trustee sale, so that the Bank could have sued for a deficiency judgment in that same amount had it purchased at that lower bid. Even in such a case, the builder/debtor's liability is not on the debt which has been satisfied, it is for the tort. The builder's (Taurus') financial exposure is not actually different than if it had been sued by a third party purchaser after the lender's debt was paid.[9]

V

STRICT LIABILITY

As with the negligence cause of action, the Bank's strict liability claim arises from the purchase of the property at the trustee's sale. Unlike negligence law, however, which is based on a foreseeable duty of care, strict liability is based on implied representations about the quality of a product by those who participate in placing it in the stream of commerce. (*Becker* v. *IRM Corp.* (1985) 38 Cal.3d 454, 460 [213 Cal.Rptr. 213, 698 P.2d 116, 48 A.L.R.4th 601], and cases there cited.)

Assuming, arguendo, under some circumstances policy reasons would permit strict liability principles to be applied to new housing sold at a foreclosure sale,[10] we hold it does not apply when the lender is the purchaser.

In *U.S. Financial* v. *Sullivan* (1974) 37 Cal.App.3d 5, 18-19 [112 Cal.Rptr. 18], the court refused to extend the strict liability doctrine to protect a lender (Home Federal) which had financed a real property devel-

---

[9]Conceptually, the potential comparative negligence of a lender who has a contractual right to inspect all stages of construction appears to place the Bank in a significantly different position than a third party purchaser.

[10]As discussed earlier, at a foreclosure sale there is no seller in the normal course of business placing the product in the stream of commerce and making implied representations as to its quality, and thus the traditional basis for strict liability is absent. Here we are not faced with an individual homeowner purchasing a unit at a foreclosure sale, and do not decide if strict liability should attach for policy reasons. (See 1 Miller & Starr, Current Law of Cal. Real Estate (1985 pocket supp.) § 3:121, p. 300.)

opment and who sued the developer and others for defects which impaired its security, stating: "The doctrine of manufacturers' and suppliers' strict liability in tort was developed primarily to protect individual consumers, users, and, to some extent, bystanders who are in no position to protect themselves from defective products. [Citations.]

"A lender is not in such a vulnerable position. Without its money, the mass production of homes could not proceed. When it is called upon to lend its money, a lender is in a position to require of the developer not only plans and specifications but engineering reports of all sorts, including a soil test report. Thus, the historical reason for imposing strict liability is absent when sought by a lender whose resources are loaned to facilitate the mass construction of homes.

"Moreover, in California at least, the purpose of imposing strict liability in tort is said to be to require the manufacturer of a product to absorb the cost of injuries resulting from a defect in the product so that the risk of injury can be insured by the manufacturer and distributed among the public as a cost of doing business. [Citations.] Unlike the consumer, user, or bystander, the lender is itself a link in the marketing chain of mass-produced homes and residential lots and is itself in a position to spread the risks of harm resulting from a defective lot or home." Although the lender in *U.S. Financial* was seeking damages for impairment of its security incurred as lender, rather than costs incurred as purchaser, we find its analysis applicable to any lender in a real property development transaction seeking to impose strict liability on a builder.[11]

## VI

Since we reverse the portion of the judgment based on the order sustaining Taurus' demurrer to the negligence cause of action, the Bank may also proceed with its alter ego claim.

The portion of the judgment based on the orders sustaining the demurrers to all causes of action except negligence is affirmed. The portion of the

[11]In *U.S. Financial,* the antideficiency and full credit bid rules did not come into play since the lender (Home Federal), suing the developer as a third party tortfeasor for impairment of security, had not foreclosed. (*U.S. Financial* v. *Sullivan, supra,* 37 Cal.App.3d at pp. 14-15.) The court held an action for *negligent,* as opposed to strict liability, impairment of security was proper. (*Id.,* at p. 14.)

judgment based on the order sustaining the demurrer to the negligence cause of action and alter ego allegation is reversed.

Staniforth, Acting P. J., and Benke, J.,* concurred.

---

*Assigned by the Chairperson of the Judicial Council.