[No. D009603. Fourth Dist., Div. One. July 18, 1989.]

GENTRY CONSTRUCTION COMPANY, INC., Petitioner, v.
THE SUPERIOR COURT OF SAN DIEGO COUNTY, Respondent;
R. H. LIQUIDATING, INC., Real Party in Interest.

178

**COUNSEL**

Daniel R. Shinoff, Mitchell S. Wagner and Stutz, Gallagher & Artiano for
Petitioner.

No appearance for Respondent.

Bruce W. Lorber, P. Robert Philp, Jr., and Lorber, Grady, Farley & Volk for Real Party in Interest.

## OPINION

**BENKE, J.—**

### FACTUAL SUMMARY

Petitioner Gentry Construction Company, Inc. (Gentry), purchased a development of graded lots in La Jolla from the predecessor of real party in interest R. H. Liquidating, Inc. (RH). The sale was contingent upon Gentry's approval of an engineering report on the property. After the sale, Gentry built a number of homes on the lots and sold them to the public.

Plaintiff Dorcus Gregory is the owner of one of the homes. In his complaint he alleges Gentry and RH, among others, are strictly liable to him in tort for the defective condition of the soil beneath his home. He seeks damages for the diminished value of his home, loss of its use and damage to his personal property.

Gentry filed a cross-complaint against RH which alleges RH is either partially or totally responsible for plaintiff's damages. In its third cause of action Gentry alleges a claim for comparative indemnity, while in its fifth cause of action Gentry asks for total indemnity based upon RH's alleged strict liability.

RH moved for summary judgment on all the claims against it. In the alternative RH sought adjudication on a number of issues. The trial court denied the motion for summary judgment, but among other issues on which it granted summary adjudication, the trial court found "That GENTRY cannot, as a matter of law, maintain a cause of action in strict products liability against R.H. LIQUIDATING." In response to our inquiry, RH states the result of this finding is to "nullif[y] GENTRY' s cause of action for 'total indemnity-strict liability.' " Gentry filed a timely petition for a writ of mandate in which it asks that we direct the trial court to vacate its finding on this issue. We deny the petition.

### ISSUES PRESENTED

Gentry's attempt to shift the responsibility for the plaintiff's damages to RH implicates two conflicting legal principles: the doctrine of strict liability

in tort for the production of defective products and the principle of equitable idemnity between tortfeasors. ▆▆ As we will explain, a commercial plaintiff may not rely upon the doctrine of strict liability to recover its losses. ▆▆ Nonetheless, where, as here, a commercial defendant has been asked to compensate a consumer, it may attempt to shift its responsibility to other tortfeasors, including those who may be liable to the consumer on a theory of strict liability. The right to seek such equitable indemnity is no different from the comparative indemnity available from negligent tortfeasors. Thus in this case we find RH's strict liability to the plaintiff, if established, will support Gentry's claim for comparative indemnity. However, RH's strict liability will not support any distinct form of equitable indemnity, such as the "total indemnity based upon strict liability" Gentry has alleged in its fifth cause of action.

## DISCUSSION

▆▆ There is substantial precedent which would prevent a commercial plaintiff from recovering damages it has suffered on a theory of strict liability in tort. (See *Sumitomo Bank* v. *Taurus Developers, Inc.* (1986) 185 Cal.App.3d 211, 226-227 [229 Cal.Rptr. 719]; *Muro* v. *Superior Court* (1986) 184 Cal.App.3d 1089, 1097-1098 [229 Cal.Rptr. 383]; *Sacramento Regional Transit Dist.* v. *Grumman Flxible* (1984) 158 Cal.App.3d 289, 298 [204 Cal.Rptr. 736]; *Kaiser Steel Corp.* v. *Westinghouse Elec. Corp.* (1976) 55 Cal.App.3d 737, 748 [127 Cal.Rptr. 838]; *U.S. Financial* v. *Sullivan* (1974) 37 Cal.App.3d 5, 18-19 [112 Cal.Rptr. 18].) As the court in *Kaiser Steel Corp.* v. *Westinghouse Elec. Corp., supra,* 55 Cal.App.3d at pages 747-748, explained: "The rule of strict liability for defective products is an example of necessary paternalism judicially shifting risk of loss by application of tort doctrine because California's statutory scheme fails to adequately cover the situation. Judicial paternalism is to loss shifting what garlic is to a stew—sometimes necessary to give full flavor to statutory law, always distinctly noticeable in its result, overwhelmingly counterproductive if excessive, and never an end in itself.

"· · · · · · · · · · · · · · · · · · · ·

"[T]he doctrine of products liability does not apply as between parties who: (1) deal in a commercial setting; (2) from positions of relatively equal economic strength; (3) bargain the specifications of the product; and (4) negotiate concerning the risk of loss from defects in it. [Citation.]"

▆▆ However, different considerations obtain when the losses in dispute are not simply the losses incurred by a commercial enterprise but are losses incurred by a consumer who had or may have a claim for strict liability in

tort. In such instances where, as here, two tortfeasors may both be strictly liable to a consumer,[1] we are aware of no authority which prevents one of the tortfeasors from attempting to shift responsibility for the consumer's losses to the other tortfeasor by seeking comparative indemnity under the principles set forth in *American Motorcycle Assn.* v. *Superior Court* (1978) 20 Cal.3d 578 [146 Cal.Rptr. 182, 578 P.2d 899] (*AMA*). Rather cases from other jurisdictions have allowed indemnity between strictly liable tortfeasors (see, e.g., *Liberty Mutual Insurance Co.* v. *Williams Machine and Tool* (1975) 62 Ill.2d 77 [338 N.E.2d 857, 860]; *Jones* v. *Aero-Chem Corp.* (D.C.Mont. 1987) 680 F.Supp. 338, 341), and our Supreme Court itself has suggested that such indemnity is available in this state as well.

In particular in *Safeway Stores, Inc.* v. *Nest-Kart* (1978) 21 Cal.3d 322 [146 Cal.Rptr. 550, 579 P.2d 441] (*Safeway*), the Supreme Court expanded the doctrine of equitable indemnity to allow apportionment between a defendant liable in both negligence and strict liability and a defendant strictly product liable. The Supreme Court stated: "Nothing in the rationale of strict liability conflicts with a rule which apportions liability between a strictly liable defendant and other responsible tortfeasors." (*Id.* at p. 330.) "[E]ven in cases in which one or more torfeasors' liability rests on the principle of strict liability, fairness and other tort policies, such as deterrence of dangerous conduct or encouragement of accident-reducing behavior, frequently call for an apportionment of liability among multiple torfeasors." (*Ibid.*) Moreover "a contrary conclusion, which confined the operation of the comparative indemnity doctrine to cases involving solely negligent defendants, would lead to bizarre, and indeed irrational, consequences. Thus, if we were to hold that the comparative indemnity doctrine could only be invoked by a negligent defendant but not by a strictly liable defendant, a manufacturer who was actually negligent in producing a product would frequently be placed in a better position than a manufacturer who was free from negligence but who happened to produce a defective product, for the negligent manufacturer would be permitted to shift the bulk of liability to more negligent cotortfeasors, while the strictly liable defendant would be denied the benefit of such apportionment." (*Id.* at p. 332.)

We also note those cases which have created exceptions to the rule of comparative indemnity have done so only where, because of the particular

---

[1] Because the plaintiff is not a party to this writ proceeding, and because RH has not asked us to do so, we have not determined whether a home buyer may proceed in strict liability against the vendor from whom a developer acquired allegedly defective lots. (But see *Preston* v. *Goldman* (1986) 42 Cal.3d 108, 117 [227 Cal.Rptr. 817, 720 P.2d 476], where in a negligence action the Supreme Court said "the general rule of nonliability has been applied to conditions on the land created by the predecessor landowner, with the landowner's role as 'creator' taking a secondary place.") (Fn. omitted.)

factual context, fairness did not require that any part of the loss be shifted from a defendant to a third party, or where such loss shifting would interfere in a special relationship between the plaintiff and the third party. For instance in *Jaffe* v. *Huxley Architecture* (1988) 200 Cal.App.3d 1188 [246 Cal.Rptr. 432] (*Jaffe*), the developers of a condominium complex attempted to recover all or a portion of the amounts they paid to homeowners from the board of directors of the homeowners association and we affirmed a judgment dismissing their indemnity claim. Because the board's errors could have been asserted against the owners as comparative negligence we found "fairness to the Developers in this case does not depend on the availability of equitable indemnificiation. An apportionment of their culpability with regard to the acts and omissions of the board could be accomplished without the use of that doctrine and without suit being filed against the individual board members." (*Id*. at p. 1192.)

In *Munoz* v. *Davis* (1983) 141 Cal.App.3d 420 [190 Cal.Rptr. 400] (*Munoz*), an attorney failed to timely file a personal injury action against the driver of an automobile. The Court of Appeal refused to allow the attorney to shift his malpractice liability to the driver by way of a claim for equitable indemnity. "The effect of allowing a negligent attorney to recover indemnity from his client's adversary would be to judicially repeal the statutes of limitation, make every tortfeasor the guarantor of his victim's adequate compensation as well as the malpractice insurer of his victim's attorney and undermine the fiduciary duty of the nonnegligent attorney to his client." (*Id*. at p. 429.) Similarly in *Held* v. *Arant* (1977) 67 Cal.App.3d 748, 752-753 [134 Cal.Rptr. 422] (*Held*), the court refused to allow a negligent attorney to bring an indemnity claim against his successor on the grounds the successor's representation enhanced rather than reduced the client's initial loss. The court found that exposure to an indemnity claim would interfere with the second attorney's ability to vigorously represent his client's interests. (*Ibid*.)

Unlike these situations, in the case of two strictly liable torfeasors it is difficult to argue fairness would not be served by allocating the plaintiff's damages between them in proportion to their responsibility for the plaintiff's injuries. The relationship between strictly liable tortfeasors and consumers does not provide the damage allocation which was otherwise available in *Jaffe*. Moreover, unlike the attorney-client relationships discussed in *Munoz* and *Held,* the right of comparative indemnity will not undermine the nonfiduciary relationship between consumers and manufacturers or impose upon manufacturers any conflicting obligations.

In sum we believe multiple tortfeasors who are strictly liable to the same plaintiff may seek comparative indemnity from each other or from negligent

tortfeasors. However, in the absence of a statute or agreement to the contrary, defendants are not entitled to any species of indemnity other than the comparative indemnity available under *AMA*. (*Far West Financial Corp.* v. *D & S Co.* (1988) 46 Cal.3d 796, 808 [251 Cal.Rptr. 202, 760 P.2d 399] (*Far West*).) ■ In *Far West* the developer of a condominium project argued that its claim for total indemnity, as opposed to a claim for comparative indemnity, was not barred under Code of Civil Procedure section 877.6, subdivision (c), by a good faith settlement with the plaintiff. In rejecting this argument the Supreme Court stated: "[T]here are not two separate equitable indemnity doctrines in California, but a single 'comparative indemnity' doctrine which permits partial indemnification on a comparative fault basis in appropriate cases. To be sure, there is nothing in either *American Motorcycle* or *People* ex rel. *Dept. of Transportation* which suggests that it would necessarily be improper, in a comparative indemnity action, for a trier of fact to determine that the facts and equities in a particular case support a complete shifting of a loss from one tortfeasor to another, rather than, for example, a 60 percent/40 percent or 95 percent/5 percent division of the loss. [Citation.] Even when such a total shift of loss may be appropriate, however, the indemnitee's equitable indemnity claim does not differ in its fundamental nature from other comparative equitable indemnity claims. Accordingly, we think the Court of Appeal in *Standard Pacific of San Diego* v. *A. A. Baxter Corp.*, *supra*, 176 Cal.App.3d 577, 587-588 [222 Cal.Rptr. 106], properly analyzed the teaching of *People* ex rel. *Dept. of Transportation*, *supra*, 26 Cal.3d 744 [163 Cal.Rptr. 585, 608 P.2d 673], when it observed that '[c]omparative equitable indemnity includes the entire range of possible apportionments, from no right to any indemnity to a right of complete indemnity. Total indemnification is just one end of the spectrum of comparative indemnification.'" (*Id.* at p. 808, fn. omitted.)

■ Having set forth these general legal principles, we next confront the record presented to us by the parties. At the outset we must frankly admit that the issues, as framed in the record, are somewhat confusing. For instance, as we have seen, RH sought and received an order determining "That GENTRY cannot, as a matter of law, maintain a cause of action in strict products liability." Were we to interpret this finding narrowly, as only referring to claims Gentry has against RH for losses Gentry itself endured, the order would be a correct statement of law under *Kaiser Steel Corp.* v. *Westinghouse Elec. Corp.*, *supra*, 55 Cal.App.3d at pages 747-748. Plainly a developer, who has the ability to protect itself from the risks posed by defective products, cannot recoup damage it suffers by way of a claim for strict liability in tort.

The problem with a narrow interpretation of the order is that Gentry has made no such damage claim against RH. Rather, as we read its cross-

complaint, Gentry seeks to recover from RH only the damages it may be required to pay the plaintiff. Applying the court's finding to each of Gentry's indemnity claims, when RH's strict liability to the plaintiff has not itself been determined, is not consistent with the teaching in *Safeway,* which as we have seen, suggests that strict liability may be equitably apportioned. Thus, were our analysis to stop here we would be inclined to grant Gentry's petition for a writ.

However there is yet another twist in the record. In making its motion, RH's attack was directed solely toward Gentry's fifth cause of action for "total indemnity-strict liability." Accordingly we inquired of the parties whether the order impaired more than Gentry's fifth cause of action and RH advised us that the effect of the order it obtained was to nullify the fifth cause of action. As we have seen, under the holding in *Far West* "total indemnity" as a theory distinct from "comparative indemnity" does not exist in California. Here Gentry's third cause of action, which according to RH was not the subject of the trial court's order, seeks comparative indemnity. Under *Far West,* in the absence of a statute or a contract, Gentry can ask for no more. Thus in the final analysis RH's attack on the fifth cause of action was well taken. If the fifth cause of action seeks no more than comparative indemnity, it is surplusage. On the other hand, if it is an attempt to allege more than comparative indemnity, i.e., an equitable claim which is not subject to the good-faith settlement bar set forth in Code of Civil Procedure section 877.6, subdivision (c), it contravenes *Far West.* Accordingly we believe the trial court acted properly in granting an order which relieves a trier of fact of the burden of passing upon Gentry's fifth cause of action.

Thus although the strict liability of Gentry and RH may be apportioned between them on a comparative basis, we deny Gentry's petition for a writ.

Kremer, P. J., and Froehlich, J., concurred.