**BRICKLAYERS AND ALLIED CRAFTS UNION, LOCAL NO. 4 OF MINNESOTA, AFL–CIO, Appellee,**

v.

**ASSOCIATED GENERAL CONTRACTORS OF MINNESOTA, Appellant.**

No. 82–2320.

United States Court of Appeals, Eighth Circuit.

Submitted March 18, 1983.

Decided July 5, 1983.

A. Patrick Leighton, Phyllis Karasov, of Moore, Costello & Hart, St. Paul, Minn., for appellant.

Bernard E. Boland of Boland Law Offices, St. Cloud, Minn., for appellee.

Before BRIGHT and JOHN R. GIBSON, Circuit Judges, and HANSON,* Senior District Judge.

HANSON, Senior District Judge.

The issue in this case is whether a mid-contract wage dispute which arose pursuant to the "Wage Opener" provision in a collective bargaining agreement is subject to arbitration. The district court[1] granted the Union's motion for summary judgment and ordered the Employer to binding arbitration over the wage dispute. We affirm.

## I.

On January 9, 1982, the Bricklayers and Allied Crafts Union of Minnesota and the Associated General Contractors of Minnesota reached a collective bargaining agreement. Salient clauses of the agreement for purposes of this appeal are the following:

### ARTICLE 9—VIOLATIONS OF AGREEMENT

If disputes cannot be resolved between the parties, then alleged violations of the terms of this Agreement are subject to the grievance and arbitration clause of this Contract.

. . . .

### ARTICLE 11—SETTLEMENT OF DISPUTES

1. Any controversy over the interpretation of, or adherence to the terms of this Agreement shall first be attempted to be resolved between the Union and the Employer. Any controversy or grievance shall be deemed to be waived unless submitted in writing within ten (10) working days after the first occurrence of the event or knowledge of the condition giving rise to the grievance.

2. If a satisfactory settlement cannot be reached within five (5) working days the matter may be brought to the AGC-Basic Trades Disputes Board, if both parties agree in writing.

. . . .

4. Should the Disputes Board, as established, be unable to reach a decision on the matter before it, or because of a deadlock (lack of majority) or if either party refuses to use the Joint Disputes

---

* The Honorable William C. Hanson, Senior Judge, United States District Court for the Northern and Southern Districts of Iowa, sitting by designation.

1. The Honorable Edward J. Devitt, Senior Judge, United States District Court for the District of Minnesota.

Board then the matter may be referred to a Board of Arbitration . . . .

. . . .

## ARTICLE 15—STRIKES, LOCKOUTS, WORK INTERFERENCE

It is agreed that there will be no strike, work-stoppage, slow-down, sit-down, stay-in, or any other concerted interference with any Employer's business or on construction jobs by these Unions or the members thereof, nor any lockout by any Employers during the existence of the Agreement without first giving AGC or the Employer and the Union 48 hours notice and sending the dispute through procedures established in Article 11.

The final salient provision is one of the supplements to the agreement which sets out wages for various locals of the Union. Regarding Local 4, St. Cloud, the agreement sets the wages for 1981 and then provides for a "Wage Opener" on both May 1, 1982, and May 1, 1983. Although the term is undefined in the collective bargaining agreement, we understand wage opener to mean that wages are open to renegotiation.

Sometime after the collective bargaining agreement was entered, Local 4 (Union) and Associated General Contractors (Employer) began negotiating the May 1, 1982, wage opener. When agreement could not be reached, the Union and the Employer joined in submitting the matter to the Disputes Board pursuant to Article 11, paragraph 2. The Disputes Board refused to hear the case "as wage openers are not subject to the Grievance and Dispute procedure." Letter to Union from Chairman of the Basic Trades Disputes Board, Clerk's Record (C.R.) at 24. The Disputes Board also indicated that if agreement could not be reached on the wage issue, the Union had the right to strike or take economic action. *Id.* Subsequently, the Employer refused the Union's request to submit the matter to arbitration. The Union then brought this action under § 301 of the Labor Management Relations Act, 29 U.S.C.

§ 185(a), seeking a declaratory judgment that the wage dispute was arbitrable. *See* 28 U.S.C. § 2201. In a brief order, the district court granted the Union summary judgment and ordered the Employer to join in binding arbitration. The Employer appeals, contending that summary judgment was improper; that the wage opener was not an arbitrable issue; and that even if it were, the issue has already been submitted to the grievance and arbitration procedure and the Disputes Board has rendered a final decision.

## II.

■ The Employer initially claims that it was improper for the district court to grant summary judgment because genuine issues of material fact existed. Rule 56, Fed.R. Civ.P. If there were indeed fact issues, the Employer had the opportunity but failed to raise any such issues in opposition to the Union's motion and supporting affidavit. "When a motion for summary judgment is made and supported by affidavits, the party opposing the motion may not rest on the allegations in his pleadings but must resist the motion by setting forth specific facts that raise a genuine issue of fact for trial." *Burst v. Adolph Coors Co.,* 650 F.2d 930, 932 (8th Cir.1981). Rule 56(e) makes clear the substantial risk of an adverse judgment to a nonresponding opposing party: "If he does not respond, summary judgment, if appropriate, shall be entered against him." The nature of this case makes summary judgment appropriate because "[t]he question of arbitrability is . . . one of contract construction and is for the courts to decide." *Kansas City Royals v. Major League Baseball Players Ass'n,* 532 F.2d 615, 620 (8th Cir.1976). *See Wiley & Sons v. Livingston,* 376 U.S. 543, 84 S.Ct. 909, 11 L.Ed.2d 898 (1964). Thus we reject the notion that summary judgment was improper in this case.

## III.

■ In the *Steelworkers* trilogy,[2] the Supreme Court stated the role of the courts in

**2.** *United Steelworkers of America v. American*      *Mfg. Co.,* 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d

resolving arbitration issues and enunciated the now well-known presumption of arbitrability for labor disputes:

[T]he judicial inquiry under § 301 must be strictly confined to the question whether the reluctant party did agree to arbitrate the grievance or did agree to give the arbitrator power to make the award he made. An order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage.

*United Steelworkers of America v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 582–83, 80 S.Ct. 1347, 1352–53, 4 L.Ed.2d 1409 (1960).

The Employer contends in this case that it would be an unwarranted extension of the federal labor policy favoring arbitration to hold arbitrable the wage opener dispute. But this circuit previously affirmed a district court order to arbitrate a mid-contract wage dispute in *Laundry, Dry Cleaning & Dye House Workers International Union, Local 93 v. Mahoney,* 491 F.2d 1029 (8th Cir.), *cert. denied,* 419 U.S. 825, 95 S.Ct. 42, 42 L.Ed.2d 49 (1974). Because the judgment was affirmed by an equally divided *en banc* court, the case is not binding precedent. *Trans World Airlines, Inc. v. Hardison,* 432 U.S. 63, 73 n. 8, 97 S.Ct. 2264, 2271 n. 8, 53 L.Ed.2d 113 (1977). But Eighth Circuit cases decided since *Laundry Workers* reflect strong adherence to the federal labor policy favoring arbitration and thus reinforce the position taken by those judges in *Laundry Workers* who construed the wage dispute as arbitrable. *See, e.g., Minot Builders Supply Ass'n v. Teamsters Local 123,* 703 F.2d 324 at 327 (8th Cir.1983); *General Drivers, etc. v. Sears, Roebuck & Co.,* 535 F.2d 1072, 1075 (8th Cir.1976); *Kansas City Royals, supra,* 532 F.2d at 620–21.

While of course we must defer to this strong federal labor policy favoring arbitration, we need not rely on this policy to any great extent in the instant case in concluding that the wage dispute is arbitrable. The *Steelworkers* trilogy indicates that *doubts* should be resolved in favor of coverage under an arbitration clause. In this case, we do not doubt that the contract language manifests an intent to include the dispute within the scope of the arbitration clause.

Article 9 of the collective bargaining agreement broadly refers to "disputes" between the parties which cannot be resolved and dictates that "alleged violations" of the terms of the agreement "are subject to the grievance and arbitration clause of this Contract." The grievance and arbitration clause is Article 11, broadly entitled "Settlement of Disputes." It indicates that "any controversy over the interpretation of, or adherence to the terms of this Agreement" is susceptible to the dispute-resolving procedures therein. These procedures include submission of "[a]ny controversy or grievance" to the Basic Trades Disputes Board and/or referral to a Board of Arbitration. Such language clearly is broad enough to encompass the wage dispute here at issue. Furthermore, Article 15 is a conditional no-strike clause which conditions the right to strike upon first resorting to the grievance and arbitration procedure of Article 11. As in *Laundry Workers,* "this inclusion lends support to the view that the collective bargaining agreement was intended to completely effectuate the federal policy of promoting industrial stabilization through collective bargaining." *Id.* 491 F.2d at 1033. Together these provisions indicate that the parties intended to resolve all disputes—including the wage opener—via the grievance and arbitration procedure of Article 11.

Finally, we point out that many of the most troublesome aspects for those judges in *Laundry Workers* who would have held against arbitration are not apparent in this

---

1403 (1960); *United Steelworkers of America v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960); *United*

*Steelworkers of America v. Enterprise Wheel & Car Corp.,* 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960).

case. As we have observed, there is an undisputedly broad arbitration clause in the instant contract—certainly much broader than that in *Laundry Workers* which on its face went only to employee grievances. Unlike *Laundry Workers,* there is no separate contract provision here stating that the wage opener is negotiable (as opposed to being arbitrable). Also unlike *Laundry Workers* the parties in this case from the outset resorted to the grievance and arbitration procedure of Article 11 by submitting their dispute to the Disputes Board, which we take as an apparent acknowledgement that the wage opener is subject to the grievance and arbitration procedure.

We therefore hold that the wage opener dispute is arbitrable under the terms of the collective bargaining agreement.

### IV.

■ The Employer also argues that it has sufficiently adhered to the grievance and arbitration procedure of Article 11 because it agreed to submit the wage dispute to the Disputes Board which issued a final and binding decision. We cannot agree because the Disputes Board refused to hear the case. Accordingly there was no decision to which the parties were bound. In addition, the full complement of dispute-resolving mechanisms of Article 11 was not employed because the Employer has refused to submit to arbitration. Paragraph 4 of Article 11 indicates unqualifiedly that the inability of the Disputes Board to reach a decision renders the matter referrable to a Board of Arbitration. Thus there was no award by the Disputes Board which is binding upon the parties and they are compelled to submit the issue to arbitration.

Affirmed.