**FRANK M. BOOTH, INC., a California corporation, dba Valley Sheet Metal Co., Plaintiff,**

v.

**REYNOLDS METALS COMPANY, a Delaware corporation, dba Reynolds Aluminum Supply Co., Defendant.**

**No. Civ. S–89–48–DFL.**

United States District Court, E.D. California.

Jan. 4, 1991.

As Corrected Jan. 9, 1991.

---

William A. Lichtig and Todd D. Leras of McDonough, Holland & Allen, Sacramento, Cal., for plaintiff.

Anthony C. Diepenbrock of Greve, Clifford, Diepenbrock, Sacramento, Cal., for defendant.

## ORDER

LEVI, District Judge.

This matter came on for hearing on December 14, 1990, on the parties' cross motions for summary judgment. William A. Lichtig Esq., and Todd D. Leras, Esq., appeared as counsel for plaintiff Frank M. Booth, Inc. Anthony C. Diepenbrock, Esq., and Mark H. Harris, Esq., appeared as counsel for defendant Reynolds Metals Company.

## I. *Procedural Background*

In January and February 1990, the parties filed extensive summary judgment briefs, as well as a lengthy "stipulation as to facts without substantial controversy." The visiting judge previously assigned to this matter, in a brief order entered February 20, 1990, declined to grant summary judgment as to any portion of the case. The parties were not given an opportunity to orally urge their summary judgment motions. Since that time the parties also have filed extensive trial briefs and a joint pretrial statement setting forth their respective positions.

The matter was reassigned to this court on November 28, 1990. At a status conference on November 13, 1990, the court notified the parties that based upon a preliminary review of the file several of the issues previously briefed appeared appropriate for summary judgment adjudication and that the court was inclined to reconsider the earlier denial of summary judgment. The court stated that it would inform the parties of which issues would be reconsidered and that the parties would be given an opportunity to be heard on those issues. On December 7, 1990, the court issued an order informing the parties that the court was of the view that summary judgment might be appropriate as to two matters: first, as to the applicability *vel non* of California Commercial Code section 2207(3) to the undisputed facts of the case, and second, as to the viability under California law of plaintiff's negligence claim for economic damages. The parties have been given an opportunity to file supplemental papers on these two issues.

Oral argument was heard on December 14, 1990. Having reviewed the parties' prior cross-motions for summary judgment, joint pre-trial statement, respective trial briefs, supplemental briefs, the pleadings and record in this case and having heard oral argument, the court is prepared to rule on these two legal issues in light of undisputed facts.

## II. *Factual Background*

The parties have stipulated to the facts relating to the formation and content of the contract in a "stipulation as to facts without substantial controversy" and in their Joint Pretrial Statement.

Frank M. Booth, Inc., dba Valley Sheet Metal Co., ("Valley") is a California corporation engaged in the business of installing metal roofing systems. Valley is licensed in California for general engineering, general building and sheet metal work and holds an industry roofing license related to sheet metal and architectural metal work. Reynolds Metals Company is a Delaware corporation doing business in California under the name Reynolds Aluminum Supply Company ("Reynolds"). Reynolds sells and supplies aluminum materials including aluminum roofing materials.

On November 20, 1986, Valley was awarded the roofing subcontract for the San Jose convention center. Sometime prior to April of 1987, Valley requested a bid from Reynolds on 3003 Aluminum to be used in roofing the convention center. Valley's estimating manager sent a copy of the specifications for the metal roofing material to Reynolds' field sales representative. Reynolds responded by providing Valley the product description and data sheet for 5010 Aluminum, a potential substitute and less expensive roofing material. The information sent concerning 5010 Aluminum stated that there were no special handling requirements for the material.

On April 28, 1987, Valley issued its purchase agreement for 50 coils of 5010 Aluminum. Valley's purchase agreement form indicated in pertinent part as follows:

5. The Seller agrees:

5.1 To repair or replace at the construction site at the Seller's expense, all defects of materials or workmanship in the material. . . .

5.4 To indemnify Valley and the Prime against and hold harmless from any and all loss, damage, expense, attorneys' fees and liability incurred on account of any breach by the Seller of any of the Seller's obligations under this Agreement. . . .

5.6 That the material shall conform to the requirements of Valley's contract with Prime which are applicable to the

**1444**

material or, if Valley's Contract with Prime does not have such requirements, that the material shall be of the quality specified herein or of the best grades of their respective kinds if no quality is specified and shall be fit for the purposes intended. . . .

9. Additional Provisions:

No variance from terms herein will be accepted by Valley Sheet Metal Co. unless such variance is approved in writing.

On May 19, 1987, Reynolds sent an acknowledgement and sales order to Valley that provided in part, as follows:

(On the front page) Our acceptance is expressly conditioned on your agreement to the terms and conditions on the front and reverse sides of this Sales Order. YOU WILL BE DEEMED TO HAVE AGREED TO SUCH TERMS AND CONDITIONS, AND, IN RELIANCE THEREON, THIS SALES ORDER WILL BE PLACED IN SCHEDULE UNLESS WRITTEN NOTICE OF ANY ERRORS OR OBJECTIONS TO THIS SALES ORDER IS RECEIVED BY US WITHIN 10 DAYS FROM THE DATE SHOWN BELOW.

2. **WARRANTIES.** As to its products at the time of shipment, Seller warrants good title, freedom from defects in material and workmanship and conformance to its standard specifications and those stated on the front of this Order. SELLER MAKES NO OTHER WARRANTIES, EXPRESS OR IMPLIED, WRITTEN OR ORAL, INCLUDING, BUT NOT LIMITED TO, WARRANTIES OF MERCHANTABILITY OR FITNESS FOR ANY PARTICULAR PURPOSE.

3. **LIMITATION OF LIABILITY.** SELLER'S EXCLUSIVE LIABILITY FOR THE BREACH OF ANY OF ITS WARRANTIES SHALL BE TO REPLACE NONCONFORMING PRODUCTS AT THE ORIGINAL POINT OF DELIVERY, TO REPAIR NONCONFORMING PRODUCTS OR TO REFUND BUYER'S PURCHASE PRICE FOR THE NONCONFORMING PRODUCTS. WHICHEVER OPTION SELLER SELECTS, SELLER'S LIABILITY

FOR ANY LOSS OR DAMAGE ARISING OUT OF OR RESULTING FROM OR IN ANY WAY CONNECTED WITH THIS ORDER SHALL NOT EXCEED BUYER'S PURCHASE PRICE FOR THE PARTICULAR PRODUCT OR SERVICE UPON WHICH SUCH LIABILITY IS BASED, REGARDLESS OF WHETHER SUCH LIABILITY ARISES IN CONTRACT, ... TORT (INCLUDING BUT NOT LIMITED TO NEGLIGENCE OR STRICT LIABILITY) OR OTHERWISE. IN NO EVENT SHALL SELLER BE LIABLE TO BUYER FOR LOSS OF PROFITS OR REVENUE OR FOR ANY INCIDENTAL, CONSEQUENTIAL, SPECIAL OR PUNITIVE DAMAGES. . . .

4. **PAYMENT TERMS.** . . . Buyer agrees to pay ... Seller's reasonable costs of collection, including, but not limited to, reasonable attorneys' fees.

After Valley received Reynold's confirmation, neither party attempted to communicate with the other regarding the terms of the contract found on their respective forms. The 5010 Aluminum coils were delivered to Valley in September, 1987. Valley paid Reynolds the full invoiced amount of $200,988.17 for the 5010 Aluminum coils.

Valley inspected the materials for shipment damage and, finding none, stored the coils in their packing materials, outside, out of weather and under a tarp. Valley's use of the coils was delayed, however, from October 1987 to July 1988 because of delays in the convention center construction project. When Valley began work on the job site in July 1988, it discovered that the 5010 Aluminum coils were badly water stained and would have to be replaced.

The parties have stipulated that Reynolds had a certain amount of information concerning the vulnerability of 5010 Aluminum to water staining which it did not pass on to Valley. Specifically, Reynolds' agents involved in Valley's purchase knew that 5010 Aluminum was susceptible to water staining under certain conditions and that moisture condensation could occur within the 5010 Aluminum's packaging material. Reynolds had experienced a conden-

sation problem with bare aluminum coils stored in its own warehouse and knew that aluminum coils should be stored indoors. Reynolds did not provide any written information, instruction or warning to Valley concerning the susceptibility of the 5010 Aluminum to water damage or concerning storage of the material. Moreover, a Reynolds' employee visited Valley's storage facility twice during the period of delay and was informed that the project had been delayed, but did not instruct Valley on proper storage of the coils.

Valley informed Reynolds of the water damage by letter dated August 1, 1988. Reynolds denied responsibility by letter dated September 1, 1988. Valley obtained replacement materials and commenced this suit claiming breach of express and implied warranties and negligence.

### III. *Application of California Commercial Code Section 2207*

This dispute involves a classic instance of the "battle of the forms" in which contracting parties exchange pre-printed forms that attempt to cast liability for certain categories of damage on the other party to the transaction. Section 2–207 of the Uniform Commercial Code (UCC), as adopted in the California Commercial Code § 2207 (hereinafter "§ 2207")[1] is intended to address precisely this situation of the battle of the forms by providing "rules of contract formation in cases ... in which the parties exchange forms but do not agree on all the terms of their contract." *Diamond Fruit Growers, Inc. v. Krack Corp.*, 794 F.2d 1440, 1443 (9th Cir.1986).

Reynolds and Valley agree that a contract was formed between them; they agree that the California Commercial Code governs the contract and their dispute; and they agree that the rules of contract formation in § 2207 apply. They take radically different views, however, of the legal effect of § 2207 when applied to the undisputed facts of this case. Most succinctly stated, the parties disagree as to whether subsection three of § 2207 is triggered by the circumstances of the document exchange and subsequent conduct that occurred here.

Valley contends that the terms of the contract should be determined by § 2207(3). Valley notes that under § 2207(1), a written confirmation containing additional or different terms will not be deemed an acceptance when the confirmation "is expressly made conditional on assent to the additional or different terms." Since Reynold's acknowledgment is "expressly made conditional," Valley argues that the Reynold's acknowledgment did not operate as an acceptance and, therefore, that the forms exchanged by the parties did not create a contract. The contract, in Valley's view, was created by operation of § 2207(3): "conduct by both parties which recognizes the existence of a contract is sufficient to establish a contract for sale although the writings of the parties do not otherwise establish a contract." Section 2207(3) then specifies that the terms of such a contract will consist of "those terms on which the writings of the parties agree," as well as terms imposed by other sections of the California Commercial Code when the parties do not specifically waive those additional terms. These supplemen-

---

1. Section 2207 provides as follows:

(1) a definite and seasonable expression of acceptance or a written confirmation which is sent within a reasonable time operates as an acceptance even though it states terms additional to or different from those offered or agreed upon, unless acceptance is expressly made conditional on assent to the additional or different terms.

(2) The additional terms are to be construed as proposals for addition to the contract. Between merchants such terms become part of the contract unless:

(a) The offer expressly limits acceptance to the terms of the offer;

(b) They materially alter it; or

(c) Notification of objection to them has already been given or is given within a reasonable time after notice of them is received.

(3) Conduct by both parties which recognizes the existence of a contract is sufficient to establish a contract for sale although the writings of the parties do not otherwise establish a contract. In such case the terms of the particular contract consist of those terms on which the writings of the parties agree, together with any supplementary terms incorporated under any other provisions of this code.

tal terms are referred to as gap fillers. Under this view of the contract, Valley argues that it is entitled to assert express and implied warranties and is further entitled to recover its attorney's fees in an action on the contract in the event that it is the prevailing party.

Reynolds asserts that § 2207(3) has no application whatsoever on the facts of this case. Reynolds argues that its acknowledgment was not an acceptance under § 2207(1) because of the "expressly conditioned" proviso. This portion of their argument agrees with Valley's view of the law. But unlike Valley, Reynolds then argues that its acknowledgement should be viewed as a counteroffer which in turn was accepted and assented to by Valley's silence and subsequent conduct. Reynolds argues that § 2207(3) has no application whatsoever since the writings of the parties do in fact establish a contract—on the terms as set forth in Reynold's counteroffer. Based on the terms of its counteroffer, Reynolds argues that the contract includes a disclaimer of implied warranties, and a limitation of Reynold's liabilities. Reynolds further asserts that no provision in the contract, as set forth in its counteroffer, permits Valley to recover its attorney's fees in an action on the contract.[2]

The question before the court is whether, on these undisputed facts, § 2207(3) applies or whether Reynolds' acknowledgement is viewed under § 2207 as a counteroffer later assented to by Valley.

■ As an initial matter, the court must determine whether resolution of this question is for the court or the jury. One would have thought it obvious that construction of § 2207, in a setting in which the facts are not in dispute, was a purely legal matter for the court. Reynolds takes the rather surprising position, however, that interpretation of § 2207 is within the province of the jury. Reynolds would have the jury become masters of a section of the UCC that is highly technical and confusing, and which has been the subject of extensive discourse in the treatises, in scholarly articles, and in case law. Common sense rebels at a division of labor between judge and jury that would impose such a burden of legal reasoning on jurors. Nor does Reynolds' view find support in the case law. In a very similar factual setting and in the face of similar arguments concerning § 2207, the Ninth Circuit found that the issues presented were "questions of statutory and contract interpretation, which are questions of law...." *Diamond Fruit Growers, Inc. v. Krack Corp.*, 794 F.2d at 1442. Similarly, the California courts treat application of § 2207 to undisputed facts as a matter of law. *See Steiner v. Mobil Oil Corp.*, 20 Cal.3d 90, 141 Cal.Rptr. 157, 569 P.2d 751 (1977); *Lockheed Electronics v. Keronix, Inc.*, 114 Cal.App.3d 304, 170 Cal. Rptr. 591 (1981). *Cf. Congleton v. National Union Fire Ins. Co.*, 189 Cal.App.3d 51, 59, 234 Cal.Rptr. 218 (1987) (construction of the language of an insurance contract a legal issue); *Local 703, International Brotherhood of Teamsters v. Kennicott Bros. Co.*, 725 F.2d 1088 (7th Cir.1982) (meaning of a contractual phrase was question of law for the judge); *Bricklayers & Allied Crafts Union, Local No. 4 of Minnesota, AFL–CIO v. Associated Gen. Contractors of Minnesota*, 711 F.2d 90

---

**2.** Alternatively, Reynolds argues in its motion for summary judgment that its acknowledgement was "a definite and seasonable expression of acceptance." Reynold's Motion at 15. Because Valley did not object to the terms in the acknowledgement, Reynolds suggests that these terms became part of the contract by operation of § 2207(2). Subsection (2) provides that additional terms contained within a seasonable expression of acceptance become part of the contract unless the offer is expressly limited to acceptance of its terms, the new terms materially alter the contract, or there is a notification of objection to the additional terms.

Reynolds appears to have abandoned its reliance upon § 2207(2) in its Reply brief on its motion for summary judgment. In its reply brief, Reynolds makes the argument outlined in text above that its acknowledgement was not an acceptance but a counter offer. Reynolds concedes in its reply that its acknowledgement included conditional language such that it "constituted a counter-offer *and not* an acceptance." Reply at 6. Application of § 2207(2) would plainly be inappropriate for the additional reasons that Valley's purchase agreement stated that "[n]o variance from terms herein will be accepted," and Reynold's new terms materially altered the contract.

(8th Cir.1983) (question of contract construction for the court to decide). Reynolds' reliance on a Sixth Circuit precedent, *Ralph Shrader, Inc. v. Diamond Intern. Corp.*, 833 F.2d 1210, 1215 (6th Cir.1987), is misplaced because that case is explicitly based upon Michigan law. *Cf. Mead v. McNally–Pittsburg Mfg. Corp.*, 654 F.2d 1197, 1206 (6th Cir.1981) (applying § 2207 as a legal question, pursuant to Ohio Law, stating that "it is ... contrary to the policy behind the Code merely to turn the issue [of 2–207] over to the uninformed speculation of the jury").

■ In choosing between the different interpretations of § 2207 offered by the parties the court relies heavily on the Ninth Circuit's analysis in *Diamond Fruit Growers, Inc. v. Krack Corp.*, 794 F.2d 1440, 1443 (9th Cir.1986). In *Diamond Fruit Growers*, as in the present case, the parties exchanged inconsistent forms and then proceeded to perform. As here, the seller expressly conditioned its assent on the buyer/offeror's assent to additional terms in the seller's acknowledgement.

The court noted that to treat contract performance as "assent" to the additional terms in the acknowledgement would be to revert to the common law "last shot rule" that § 2207 was designed to abolish:

> One of the principles underlying section 2–207 is neutrality. If possible, the section should be interpreted so as to give neither party to a contract an advantage simply because it happened to send the first or in some cases the last form.... At common law, the offeree/counterofferor gets all of its terms simply because it fired the last shot in the exchange of forms. Section 2–207(3) does away with this result by giving neither party the terms it attempted to impose unilaterally on the other.... Application of section 2–207(3) is more equitable than giving one party it terms simply because it sent the last form. Further, the terms imposed by the code are presumably equitable and consistent with public policy because they are statutorily imposed....
>
> If we were to accept [offeree's] argument [that acceptance of goods and payment for them is equivalent to assent] we would reinstate to some extent the common law's last shot rule.... That result is avoided by requiring a specific and unequivocal expression of assent on the part of the offeror when the offeree conditions its acceptance on assent to additional or different terms. If the offeror does not give specific and unequivocal assent but the parties act as if they have a contract, the provisions of section 2–207(3) apply to fill in the terms of the contract.

*Id.* 794 F.2d at 1444–45.

The *Diamond Fruit Growers* court noted that application of § 2–207(3) was appropriate even though the seller might find itself assuming a greater degree of liability than it intended:

> The seller is most responsible for the ambiguity because it inserts a term in its form that requires assent to additional terms and then does not enforce that requirement. If the seller truly does not want to be bound unless the buyer assents to its terms, it can protect itself by not shipping until it obtains that assent.

*Id.* 794 F.2d at 1445.

The reasoning in *Diamond Fruit Growers* is both controlling and persuasive. Moreover, the approach taken by the Ninth Circuit is consistent with that taken by the California courts. *See Steiner v. Mobil Oil Corp.*, 20 Cal.3d 90, 141 Cal.Rptr. 157, 569 P.2d 751 (1977); *Lockheed Electronics Co. Inc. v. Keronix*, 114 Cal.App.3d 304, 312, 170 Cal.Rptr. 591 (1981).

Defendant argues that *Roto–Lith, Ltd. v. F.P. Bartlett & Co.*, 297 F.2d 497, 500 (1st Cir.1962), compels a different result. *Roto–Lith* found that an acceptance containing additional or different terms was a counteroffer which the first party accepted by its conduct in performing the contract, entitling the sender of the last form to all of its contract terms. But the California Supreme Court and many commentators have rejected *Roto–Lith* because it perpetuates the common law mirror image rule and favors the party who sends the last form. *Steiner v. Mobil Oil Corp.*, 20

Cal.3d 90, 108, 141 Cal.Rptr. 157, 569 P.2d 751 (1977).

In the present case, there is no dispute that Valley and Reynolds exchanged order and acknowledgment forms with conflicting express and implied warranty and limitation of liability terms, and proceeded to perform. There is no dispute that Reynolds' acknowledgement form expressly conditioned its acceptance of the contract on Valley's agreement to the terms and conditions of the acknowledgement. Under the reasoning of *Diamond Fruit* subsequent performance did not constitute assent by Valley to different or additional terms contained in the acknowledgement. In short, on these facts, Reynolds acknowledgement may not be viewed as a counteroffer assented to by Valley's subsequent conduct.

The parties agree, however, that their subsequent conduct recognized the existence of a contract. It follows that § 2207(3) applies to delineate the terms of that contract. Under § 2207(3), the contract terms include those terms upon which the parties' forms agreed, specifically, the express warranties of good title, freedom from defects in material and workmanship, and conformity with standard specifications. The parties' forms conflicted with regard to further express warranties, implied warranties, and limitation of liability provisions, so the provisions contained in the forms on those topics drop out of the contract. On the other hand, some of the "gap fillers" in the Commercial Code may provide additional warranties. Express warranties in addition to those listed may be established, depending on the proof, pursuant to the terms of § 2313. Implied warranties are supplied by § 2314 (merchantability) and § 2315 (fitness). Remedies will be those generally available under the Commercial Code.

[3] Finally, both parties' forms permit the recovery of attorney's fees under specified circumstances. Reynolds' form permits it to recover collection costs, including reasonable attorneys' fees. Valleys' form obligates Reynolds "to indemnify Valley ... from any and all loss, damage, expense, attorneys' fees and liability incurred on account of any breach by the Seller...." While, at first glance, these clauses appear different, the obligation imposed by law through California Civil Code § 1717 reconciles them.[3] Both parties' clauses permit them to recover attorney's fees in specified circumstances. California Civil Code § 1717 converts such provisions into clauses permitting the prevailing party to recover attorney's fees for any dispute on the contract. The seemingly different provisions in the parties' forms are, therefore, made identical by operation of law, and are a contract term under § 2207(3). *See Reynolds Metals Company v. Alperson*, 25 Cal.3d 124, 158 Cal.Rptr. 1, 599 P.2d 83 (1979) (holding plaintiff liable for attorney's fees incurred by defendant in prevailing on defense of plaintiff's contract claims, where contract provided only for attorney's fees to plaintiff for collection of a promissory note).

In summary, the court finds that § 2207(3) applies to the battle of the forms in the circumstances of this case. The contract that exists by operation of that section includes express warranties, among them express warranties of good title, against defects of material and workmanship, and of conformity with standard specifications. The contract further includes implied warranties of merchantability and fitness pursuant to § 2314 and § 2315, remedies provided for by the Commercial Code, and permits the prevailing party in an action on the contract to recover its attorney's fees.

---

**3.** California Civil Code Section 1717 provides, in pertinent part as follows:

(a) In any action on a contract, where the contract specifically provides that attorney's fees and costs, which are incurred to enforce the provisions of that contract, shall be awarded either to one of the parties or to the prevailing party, then the party who is determined to be the party prevailing on the con-

tract, whether he or she is the party specified in the contract or not, shall be entitled to reasonable attorney's fees in addition to other costs and necessary disbursements.

Where a contract provides for attorney's fees, as set forth above, that provision shall be construed as applying to the entire contract....

The parties are preparing further briefing on other express warranties which may arise by operation of law or subject to proof at trial.

### IV. *Valley's Negligence Claim*

Valley claims Reynolds negligently breached its duty to Valley arising out of this transaction by failing to inform or warn Valley that the unpainted 5010 Aluminum coils required special storage and handling procedures to prevent water staining. Several courts, applying California law, have denied tort claims solely for economic loss[4] and limited the remedies through which aggrieved commercial litigants may recoup their economic losses to those provided by contract and the UCC. *See S.M. Wilson & Co. v. Smith Intern., Inc.*, 587 F.2d 1363, 1376 (9th Cir.1978); *Kaiser Steel Corp. v. Westinghouse Elec. Corp.*, 55 Cal.App.3d 737, 746–7, 127 Cal. Rptr. 838 (1976). In *Seely v. White Motor Company*, 63 Cal.2d 9, 45 Cal.Rptr. 17, 403 P.2d 145 (1965), the California Supreme Court stated in dictum that "[e]ven in actions for negligence, a manufacturer's liability is limited to damages for physical injuries and there is no recovery for economic loss alone." *Id.* 63 Cal.2d at 18, 45 Cal.Rptr. 17, 403 P.2d 145.

These courts reason that tort law should not be permitted to introduce uncertainty into areas of commercial dealing in which the UCC has striven for predictability and to preserve the bargain of the commercial parties. " '[T]he adequacy of sales law controls the use of tort law, since the need to resort to tort law depends upon the extent to which sales law does or does not afford protection to a disappointed buyer.' " *Kaiser Steel Corp. v. Westinghouse Elec. Corp.*, 55 Cal.App.3d 737, 747, 127 Cal.Rptr. 838, quoting Comment, *Manufacturer's Responsibility for Defective Products: Continuing Controversy Over the Law to be Applied*, 54 Cal.L.Rev. 1681, 1690–1691 (1966). *See S.M. Wilson & Co. v. Smith Intern., Inc.*, 587 F.2d at 1376 ("Where the suit is between a nonperforming seller and an aggrieved buyer and the injury consists of damage to the goods themselves and the costs of repair of such damage or a loss of profits that the deal had been expected to yield to the buyer, it would be sensible to limit the buyer's rights to those provided by the Uniform Commercial Code.... To treat such a breach as an accident is to confuse disappointment with disaster"). In these decisions the courts have been reluctant to create rules of liability in tort which have the effect of displacing those of the UCC. *Kaiser*, 55 Cal.App.3d at 747, 127 Cal.Rptr. 838. *See also Oki America, Inc. v. Microtech International, Inc.*, 872 F.2d 312, 314–17 (9th Cir.1989) (Kozinski, J., concurring) (noting with approval the trend of the California Supreme Court away from expansive tort liability in areas traditionally governed by contract law).

In contrast, other California courts have permitted a negligence claim between commercial litigants by finding that when the harm to the plaintiff is foreseeable, a manufacturer has a duty not to impair the commercial operations of the purchaser with a faulty product. *See Ales–Peratis Foods v. American Can Co.*, 164 Cal. App.3d 277, 284, 209 Cal.Rptr. 917 (1985); *J'Aire Corp. v. Gregory*, 24 Cal.3d 799, 157 Cal.Rptr. 407, 598 P.2d 60 (1979). These cases, permitting a negligence claim exclusively for economic losses, arise when there is no privity of contract between the parties and therefore no remedy under the commercial code or contract. *See Ales–Peratis*, 164 Cal.App.3d 277, 209 Cal.Rptr. 917 (negligence claim against manufacturer of can purchased by plaintiff from intermediary supplier); *J'Aire*, 24 Cal.3d 799, 157 Cal.Rptr. 407, 598 P.2d 60 (negligence claim

---

**4.** California courts define " '[e]conomic' loss as 'damages for inadequate value, costs of repair and replacement of the defective product or consequent loss of profits—without any claim of personal injury or damages to other property ...' " *Sacramento Regional Transit Dist. v. Grumman Flxible*, 158 Cal.App.3d 289, 295, 204 Cal.Rptr. 736 (1984), quoting *Alfred N. Koplin & Co. v. Chrysler Corp.*, 49 Ill.App.3d 194, 7 Ill.Dec. 113, 364 N.E.2d 100 (1977). The line between physical injury to property and economic loss reflects the line of demarcation between tort theory and contract theory. *Sacramento Regional Transit Dist.*, 158 Cal.App.3d at 295, 204 Cal.Rptr. 736.

by tenant of commercial building against contractor remodelling the building for owner).[5] California law is not entirely clear as to the viability of a claim in negligence, for economic damages, between commercial entities in privity of contract. In such uncertainty "a federal court must use its own best judgment in predicting" what the California Supreme Court would decide in such a case. *Amfac Mortgage Corp. v. Arizona Mall of Tempe, Inc.*, 583 F.2d 426, 434–35 (9th Cir.1978) (discussing Arizona law). On balance, the court finds that the prevailing view of the California courts denies recovery between contracting commercial parties when the claim is based upon either strict products liability or negligence and is asserted solely for economic losses. Such a conclusion appropriately protects the California Commercial Code and UCC from the uncertainty that would be injected by application of tort law. Moreover, to the extent that Valley's claim is based upon a duty to warn, a duty which has evolved in cases involving inherently dangerous products, this court finds no support for the claim. No California case between merchants in privity of contract recognizes a duty to warn concerning the product when there has been no personal injury or property damage.

The court therefore orders Valley's negligence claim dismissed.

IT IS SO ORDERED.

---

**5.** The *J'Aire* case is further distinguishable because the transaction at issue—modification of a building—is not governed by the California Commercial Code which applies only to transac-tions in movable goods. *See Sacramento Regional Transit Dist. v. Grumman Flxible,* 158 Cal.App.3d 289, 300, 204 Cal.Rptr. 736 (1984).